## MATERN v. COMMISSIONER OF INTERNAL REVENUE.

### No. 6775.

Circuit Court of Appeals, Ninth Circuit.

Nov. 14, 1932.

Claude I. Parker and John B. Milliken, both of Los Angeles, Cal., and Llewellyn A. Luce, of Washington, D. C., for petitioner.

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key and John H. McEvers, Sp. Assts. to the Atty. Gen. (C. M. Charest, Gen. Counsel, and John R. Gaskins, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before WILBUR and SAWTELLE, Circuit Judges, and NORCROSS, District Judge.

SAWTELLE, Circuit Judge.

This is an appeal from an order of redetermination entered November 21, 1930, by the United States Board of Tax Appeals in favor of the appellee. The appeal is brought to this court by petition for review, and involves federal income taxes for 1923 and 1924.

William A. Matern died on December 3, 1923. The petitioner and appellant herein, Gertrud B. Matern, was the wife of the decedent, and the chief beneficiary under his last will and testament. The husband's estate was in process of administration throughout the year 1924, and was not finally settled until 1926. The administrator reported one-half of the income from the property for 1924, and the widow reported the other half.

The Commissioner of Internal Revenue determined that the administrator's return was erroneous; that the income of the es-

tate for 1924 was taxable to the widow; and that there were deficiencies in the tax due by the appellant amounting to $8,346.26 for 1923 and $23,575.41 for 1924.

The Commissioner also determined that during the year 1923 the petitioner-appellant derived a profit of $72,785 from the sale of citrus trees, and also a capital gain of $11,-314.34 from the sale of orange trees in 1924. In computing and determining the profit, the Commissioner used as a cost basis for the citrus trees sold, the cost of $250 per acre. The petitioner-appellant carried the case to the Board of Tax Appeals on the ground that the proper cost basis was $1,200 per acre.

The board upheld the Commissioner on both issues raised by the petitioner-appellant.

William A. Matern married the appellant in Germany in 1913. At that time the appellant owned property valued at about $150,000, while her husband was in debt and owned no property. In October, 1913, a few months after their marriage, the couple left Germany and went to Southern California to reside. The appellant brought with her about $5,000, and later transferred from Germany to this country between $70,-000 and $95,000.

The appellant knew nothing about business, and hence placed a large sum of money into a bank in her husband's name. She also turned over to him money for investment. In June, 1914, the appellant bought a tract of land at Santa Fe Springs, Cal., and took deed thereto in her name and in that of her husband. During 1914, three tracts, involving about 65 acres, were planted to oranges, grapefruit, and lemons. These tracts were later leased to the Petroleum Midway Company, Limited, and oil wells were drilled thereon, partially destroying the orchard.

During all of their married life, the appellant permitted her husband to handle her affairs. While title to the property was taken jointly in the name of the husband and wife as a matter of convenience, it was never intended that the husband should have any interest in such property, which was at all times the appellant's separate estate.

The above facts are clearly and unequivocally disclosed by the appellant herself, in her affidavit in re proof of claim offered by administrator, before the Estate Tax Division of the United States Internal Revenue Department, in which affidavit the appellant set forth:

"Your affiant deposes and says that she knows of her own knowledge that every cent of money that was used in any way or in any manner for the purchase and acquisition of the Sante Fe Springs property, and each and every part thereof, was her own separate property brought by her from Germany, and that no money or property of any kind or character of the said William A. Matern went into or was used in the purchase of said property. As above set forth, for the purpose of convenient handling, the moneys belonging to your affiant upon being transferred to the United States, were placed in bank accounts in the sole name of William A. Matern. As hereinafter more specifically set forth, your affiant never at any time, in the placing of said money in the said name of William A. Matern, meant or intended to convey the same to him, or to make a gift of the same to him, or of any part thereof. Such a procedure was for the purpose of the more convenient handling of the affairs of your affiant, and because of her confidence that her husband, in such fiduciary relationship, would properly handle and manage her affairs. * * *

"Your affiant deposes and says that there never was at any time any intention upon her part to make a gift of any of her property to the said William A. Matern, and that there was no intention upon her part, or upon the part of the said William A. Matern, to make a gift to him of one-half or any part of the Santa Fe Springs property. Your affiant deposes and says that at all times the said William A. Matern stated that he did not want any of the property of his said wife, and that he had no relatives of his own for whom he had to care, or to whom he desired any property ever to go, and that he did not want, or would not accept, any of the property of his wife. That there was never any intention upon the part of your affiant to make any gift to her said husband."

Similarly, the appellant testified at an inheritance tax hearing in the Superior Court of Los Angeles County, Cal., as follows:

"Q. * * * Mrs. Matern, did any money of Mr. Matern's at all go into the property? A. It was all my money.

"Q. And you allowed Mr. Matern simply to manage the affairs and take the money and keep accounts for you? A. He could do it much better than I.

"Q. What was his understanding, that his interest in the property would be for the management of it? A. Nothing at all. He

was just my husband and he managed it. He said again and again he didn't want anything of my money."

Furthermore, in the Inventory and Appraisement of Matern's estate, the following statement appears: "All of the property of the estate, including the cash on hand and the stocks and bonds listed above, is in reality the separate property of the widow, Gertrud B. Matern, as the proceeds of the income of separate property of said Gertrud B. Matern."

The foregoing statement is quoted in the administrator's account, report, and petition for partial distribution, and in his final account and petition for final distribution. In the latter account and petition, the administrator repeats and amplifies the quoted statement.

Both of the accounts referred to in the preceding paragraph were ratified, confirmed, and approved by the appellant over her signature.

Finally, in the proof of claim offered by the administrator before the Estate Tax Division of the United States Internal Revenue Department, above referred to, a similar statement is to be found.

These representations apparently were believed both by the Inheritance Tax Department of California and by the United States Bureau of Internal Revenue, since the former found that there was "no inheritance tax due out of said estate" and that "for inheritance tax purposes ░ * * the property in the hands of Mr. Matern was in effect a trusteeship, the property still being the separate property of Mrs. Matern"; and the latter found "that the audit of the return on Form 706 disclosed no tax due."

As her first issue, the appellant contends that the 1924 income received by the estate during the period of administration is taxable not to the beneficiary, but to the estate, inasmuch as said income was neither paid to the beneficiary nor credited to her account in 1924. A number of decisions are quoted in support of this argument; but we do not think that they are applicable, for the reason that in the instant case the appellant insisted, before state and federal authorities, as we have seen, that the property was her separate estate. In view of her definite and unequivocal sworn statements to that effect, she cannot now be heard to say that, for income tax purposes only, the property was part of the estate during the year 1924, and that the administrator, and not she, was charged with the duty of paying the income taxes thereon.

The appellant's husband died holding property in trust for the appellant. Such property passed to his administrator clothed with the trust.

In Myers v. Reinstein et al., 67 Cal. 89, 7 P. 192, 194, the Supreme Court of California said: "The very question to be determined here was whether the interest sought to be recovered was a part of Reinstein's estate or not. If it was a part of his estate, then no trust existed; if the trust existed, he held it in trust in his lifetime, and the interest passed to his successors to the legal title, clothed with the trust."

The above case is cited with approval in Bollinger v. Wright, 143 Cal. 292, 76 P. 1108, 1110.

The circumstances attending the acquisition of the property involved herein, which we have set forth above in extenso, compel the conclusion that the appellant had the right to demand from her husband, at any time during his lifetime, both the fruits of the property and the property itself. That being so, the income from the property was taxable to her, and not to her husband's estate.

We next advance to the second issue raised by the appellant; namely, "Was the finding of the Board that the development cost of the citrus trees amounted to only $250 per acre supported by any evidence?"

While there are some references in the record to the sale of citrus trees in 1923 and to the sale of orange trees in 1924, there are few, if any, details given regarding these sales. Some evidence was adduced as to what the cost of developing the Matern groves "would amount to," but there was no direct evidence as to what such cost of development did actually reach. There was, indeed, some opinion evidence on that subject; but we are not prepared to hold that the board erred in disregarding it.

Although the appellant's testimony before the Los Angeles Superior Court, in the state inheritance tax proceeding, indicated that she had some knowledge of her husband's activities with regard to the trees, she did not appear as a witness before the Board of Tax Appeals, which held its hearing in this case at Los Angeles, at a time when the appellant was residing at Long Beach.

On such evidence, we believe that there is some ground for the board's opinion that "* * * it is not even shown that a sale

took place, or if such a sale took place what was sold and what was received therefor. It is shown that land was acquired about 1913 or 1914, but no cost is shown for such land, and that orange groves were set out thereon in 1914. Beyond these facts we have little except certain evidence introduced for the purpose of showing what it cost to bring the orange groves to a productive state. * * * Under the record as thus presented we are of the opinion that we are not justified in attempting to fix the cost of bringing the orange groves to a productive stage."

From the foregoing it will be seen that the Board of Tax Appeals did not make a finding that the cost of production was $250 per acre, as stated by the appellant in her brief. The board merely expressed itself, first, as able to "see no justification, on the record as presented, for disturbing the Commissioner's action in including the entire income from the separate property of Gertrud B. Matern in her returns for 1923 and 1924"; and, second, as we have seen, as being "not justified in attempting to fix the cost of bringing the orange groves to a productive stage."

In proceedings of the nature brought by the appellant, the burden of proof is on the petitioner to show that the findings of the Commissioner were erroneous. In Reinecke v. Spalding, 280 U. S. 227, 232, 233, 50 S. Ct. 96, 98, 74 L. Ed. 385, the court said: "It was necessary for the taxpayer to show the illegality of the exactions. 'The burden of establishing that fact rested upon it, in order to show that it was entitled to the deduction which the Commissioner had disallowed, and that the additional tax was to that extent illegally assessed.' Botany Mills v. United States, 278 U. S. 282, 289, 290, 49 S. Ct. 129, 131, 73 L. Ed. 379; United States v. Anderson, 269 U. S. 422, 443, 46 S. Ct. 131, 70 L. Ed. 347."

Since the record here fails to supply information that enabled the Board of Tax Appeals to say that the Commissioner's determination was erroneous, or, if it was, to determine the correct amount of the tax, the board was bound to affirm the action of the Commissioner.

In other words, the presumption of correctness is attached to the Commissioner's findings. The Board of Tax Appeals, after weighing the evidence, found that such evidence was not sufficient to rebut the presumption. The duty of weighing the evidence rests upon the board, and not upon this court. Nevertheless, we are of the opinion that the board's view of the record was correct.

The appellant suggests that "the Commissioner is now trying to collect from the petitioner herein a second income tax upon the income of the estate, which was reported by the administrator and tax paid thereon." As the appellee points out, however, the original return bears an audit stamp to the effect that the tax is to be reduced by $8,651.37, that being the amount of the income tax reported and paid by the administrator as due by the estate for 1924.

Nevertheless, in the event that the refund has not already actually been made by the Commissioner, we order that the cause be remanded to the Board of Tax Appeals, with instructions that the board modify its decisions so as to provide for a credit of $8,651.37 in favor of the appellant, to be applied against the amount of the deficiency of $31,921.67, found by the Commissioner and sustained by the board.

Order affirmed, as modified.