### ALEXANDER SPRUNT & SON, Inc., v. COMMISSIONER OF INTERNAL REVENUE.
### No. 3400.

Circuit Court of Appeals, Fourth Circuit.
April 4, 1933.

J. Marvin Haynes, of Washington, D. C. (Robert H. Montgomery, of New York City, and Thomas G. Haight, of Jersey City, N. J., on the brief), for petitioner.

G. A. Youngquist, Asst. Atty. Gen. (Sewall Key and Hayner N. Larson, Sp. Assts. to the Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Byron M. Coon, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for respondent.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

NORTHCOTT, Circuit Judge.

This is a petition to review a decision of the United States Board of Tax Appeals, and involves income taxes of the petitioner for the year 1923. The decision of the Board will be found in 24 B. T. A. 599. A number of issues were involved in the decision, but only three questions are raised on this appeal, and as to one of these questions the respondent confessed error in this court.

The first question presented is whether a certain payment made by the petitioner to its stockholders constituting a partnership known as the Bremen partnership was compensation for services rendered, or was in effect a distribution of profits, and, if the former, whether the payment was reasonable in amount. The second question is whether a payment of lawyers' fees in connection with proceedings to recover certain insurance premiums was an ordinary and necessary expense of doing business or was a capital expenditure.

There is little or no dispute as to the facts as found by the Board, on these two questions. The petitioner, a North Carolina corporation, with its main office at Wilmington in that state, is engaged primarily in the purchase of raw cotton and its resale. The company was organized in 1919 to succeed a partnership of the same name, which had been carrying on the business for many years, and which then had five members— James, William H., J. L., Walter P., and Thomas E. Sprunt. In 1913 these five persons and two others, D. H. Lippitt and William L. Walker, entered into an agreement for another partnership known as Alexander Sprunt & Son, Bremen. The purpose of this partnership was "to subserve the interests of the parent firm" at Wilmington and to act as the latter's Bremen agent in purchasing cotton for resale in the Central European countries. Lippitt was designated resident partner, with Walker as assistant.

When war broke out between Germany and the United States, the Bremen firm's properties were seized as those of an alien enemy, and business was of course suspended. At the close of the war the partners decided not to resume operations in Bremen, and the office was reopened for the purpose of liquidating their affairs. The petitioner in September, 1919, opened an office in Rotterdam, and from then on the petitioner's sales were made through this branch. Walker was placed in charge as manager, and he divided his time about equally between Rot-

terdam and Bremen, in the latter place attending to the affairs of the partnership. Lippitt and W. H. Sprunt, who were officers and stockholders in the petitioner corporation, as well as some others of the stockholders, made several trips to Europe to assist in the liquidation, and also to develop and retain for the petitioner the Bremen firm's business.

Sales through the petitioner's Rotterdam branch were made to practically the same customers the Bremen partnership had had. Because of this, members of the latter felt that they were entitled to have commissions on such sales, and on January 1, 1922, an agreement was made among all the petitioner's common stockholders, fourteen in number, seven of them the partners under the 1913 contract. By this agreement all profits or losses arising upon liquidation of the firm's old business were to be paid to or met by the original seven members in certain prescribed proportions. The agreement then provided that the petitioner's seven other stockholders should be admitted to the partnership, and that all fourteen should share, according to the percentage of the petitioner's common stock which each one held "in the profits on current business, and in commissions, accruals, etc., received from the Rotterdam office of Alex. Sprunt & Son, Inc." The agreement was carried out, and as sales were made through the Rotterdam office the petitioner credited the Bremen partnership with amounts ranging from 1 to 3 per cent. of the invoice price of the sales made, less freight. These amounts were those customarily paid as commissions by the petitioner to other agents in Europe as between whom and itself no relation existed other than that of principal and agent. They were agreed upon at the time of sale.

The petitioner kept its books on the accrual basis, and in 1923, the year in question, it credited the Bremen partnership under this agreement with commissions on sales made in the amount of $336,554.48. This amount the petitioner deducted from its gross income in determining net or taxable income. The respondent permitted the deduction of only $50,483.18 thereof; the remainder, $286,071.30, he disallowed. Each of the fourteen partners reported for income tax purposes his share of the amount credited to the firm and paid the tax due thereon. The amounts so reported have not been excluded by the respondent from the individual partners' returns.

In the year 1923 the petitioner paid $7,-500 to Goldman and Unger, lawyers, for services rendered in connection with proceedings to recover approximately $2,225,000 paid by the taxpayer and its predecessor partnership between 1914 and 1920 in war risk insurance premiums, most of them by the partnership in 1917. Upon organization in 1919 the petitioner took over all the latter's assets and assumed all its liabilities. The petitioner claimed the $7,500 as a deduction from gross income. The respondent disallowed the same.

Upon the basis of these changes in the taxable income reported upon the petitioner's return, the respondent determined a deficiency in tax. Upon review, the Board approved the Commissioner's action in these respects.

In considering whether petitioner was entitled to deduct from its gross income the $336,554.48 paid the new Bremen partnership under the head of commissions, we have to consider the surrounding circumstances. It is apparent that, if the payment was not, under section 214(a) (1) of the Revenue Act of 1921 (42 Stat. 239), an ordinary and necessary expense incurred in carrying on its business, it was not properly deductible.

It is well settled that payments of this character, in order to be deducted from gross income, must be not only for services actually rendered, but must be reasonable in amount. Botany Worsted Mills v. United States, 278 U. S. 282, 49 S. Ct. 129, 73 L. Ed. 379; General Water Heater Corp. v. Commissioner (C. C. A.) 42 F.(2d) 419; Twin City Tile & M. Co. v. Commissioner (C. C. A.) 32 F.(2d) 229.

After the war the Bremen office was not reopened for the general business it formerly conducted, because of the tax that would be imposed in Bremen, but was used largely for settling up the old business. The new office in Rotterdam conducted practically all the business formerly done in Bremen. It was then concluded that, as the Rotterdam office was selling the former customers of the Bremen partnership, and thus getting the benefit of the good will of the old Bremen partnership, something, as a matter of justice, should be paid the old partnership. There is an inference to be drawn from the evidence that this was also necessary in order to prevent the Bremen partnership from starting a competitive business.

Had this allowance for good will been reasonable and had it been made only to the partners of the old Bremen firm, such an al-

lowance might possibly have been deductible as an "ordinary and necessary" expense. This, however, was not the case. The allowance for good will was in an amount equal to the usual commissions paid for making sales. This while the petitioner through the Rotterdam office, with some assistance from the Bremen office, made practically all the sales and paid all the expenses of the business. This was not an arrangement that can be justified as reasonable. The petitioner paid, and sought to deduct from its gross income, not only the usual commissions for sales, but, in addition thereto, the expense of making such sales, an item ordinarily included in the commissions.

Again, instead of making the "good will" payments to those, if any there were, entitled to them, a new partnership was formed, and, in addition to the seven persons who composed the old firm, seven others, who had no interest whatever in the "good will," were added, and a new partnership formed, mainly, it would appear, to receive these payments. These new members contributed nothing in the nature of capital or service to the firm, and were given this interest solely because they were holders of common stock of the petitioner, and their holding in the partnership was in proportion to their holding of this common stock. Certainly the payments made to these new partners were not "ordinary and necessary" expenses. In weighing transactions of this and a like nature, we will consider, not the form of the transaction, but will endeavor to ascertain the actual fact. Because it was termed commission by petitioner, when paid, does not make the amount commission. In looking through the shadow to the substance, we arrive at the same conclusion as that reached by the Board, that at least a part of this payment was, in fact, a distribution of profits.

It has been settled that the Board of Tax Appeals is a fact-finding body, and that we cannot substitute our judgment for that of the Board. Atlantic Bank & Trust Co. v. Commissioner (C. C. A.) 59 F.(2d) 363, and authorities there cited. Here, having in mind the fact that the burden is on the petitioner to show that the determination of the Commissioner was wrong and that petitioner must produce evidence from which a proper determination can be made [Merchants' Transfer & Storage Co. v. Burnet (C. C. A.) 49 F.(2d) 56; Matern v. Commissioner (C. C. A.) 61 F.(2d) 663; Williams v. Commissioner (C. C. A.) 45 F.(2d) 61], we find

ourselves in accord with the finding of the Board on this point.

Of the amount paid as commissions, the Commissioner of Internal Revenue allowed the sum of $50,483.18. We think this was a liberal allowance for money paid for the good will of the old Bremen partnership for one year. The sum of $286,071.30 paid to those constituting the new Bremen partnership, whether they had any interest in the old business or not, but on the basis of their ownership of the common stock of petitioner, was, in effect, for purposes of taxation, a distribution of profits.

It is contended on behalf of petitioner that, because the Commissioner based his adverse determination upon a wrong theory, the issue becomes fixed, and that the hearing before the Board must be confined to the issue raised by the Commissioner in the notice of deficiency given by him. We do not agree with this contention. The question before the Board and here is, not whether the Commissioner gave the right reason for his conclusion, but whether he reached the right determination, whatever course of reasoning he may have followed.

"It is immaterial whether the commissioner proceeded upon the wrong theory in determining the deficiencies. In any event the burden was on petitioner to show that the assessment was wrong." J. & O. Altschul Tobacco Co. v. Commissioner (C. C. A.) 42 F.(2d) 609, 610.

As to the item of $286,071.30, we do not think the petitioner has sustained the burden devolving upon it to show that the assessment was wrong. Merchants' Transfer & Storage Co. v. Burnet (C. C. A.) 49 F.(2d) 56.

As to the second question, whether the $7,500 paid to a firm of lawyers as fees for services rendered in connection with legal proceedings to recover war risk insurance premiums the Board found that there was no evidence from which it could be ascertained whether the amount was in payment of services rendered entirely to the petitioner, or rendered partly to the petitioner and partly to the partnership to which the petitioner, as a corporation, succeeded.

The Board further found, if a portion of the amount "was expended in establishing petitioner's right, as assignee of the partnership by purchase, to recover amounts paid out by the partnership," that portion represented an additional cost of the partnership

assets, constituting a capital expenditure not deductible from gross income. We do not agree with this conclusion. It is, in our opinion, immaterial whether the services were rendered to the corporation or to the partnership or to both.

The corporation succeeded to the partnership and took over its business. It assumed its liabilities and took over all its assets. There was no sale or purchase in the ordinary acceptance of those words. There was simply a change of entities, from a partnership to a corporation, but no real change in the personnel of the owners. The corporation purchased a going business, and, while its outlay represented a capital investment, nevertheless certain of the assets, including the claim of the insurance companies here involved, had to be handled in the ordinary course of business with certain attendant expenses necessary to keep the business in operation. It was not at all certain that, in the legal proceedings, there would be any recovery and whatever might be recovered would have to be returned as profits by the corporation in the year when received. Burnet v. Sanford & Brooks Co., 282 U. S. 359, 51 S. Ct. 150, 75 L. Ed. 383.

The cases relied upon to sustain the action of the Board are not controlling here. Blackwell Oil & Gas Co. v. Commissioner (C. C. A.) 60 F.(2d) 257; Williams v. Burnet, 61 App. D. C. 181, 59 F.(2d) 357; Murphy Oil Co. v. Burnet (C. C. A.) 55 F.(2d) 17; Croker v. Burnet, 61 App. D. C. 342, 62 F.(2d) 991. They are cases where expenditures were made either in defending the title to property purchased as a capital asset or in endeavoring to add to the value of a capital asset, or were not made in due course of a business being carried on. We think the question here is controlled by the principles laid down by Mr. Justice Sutherland in Kornhauser v. United States, 276 U. S. 145, 48 S. Ct. 219, 220, 72 L. Ed. 505, where it is said: "The basis of these holdings seems to be that where a suit or action against a taxpayer is directly connected with, or, as otherwise stated (Appeal of Backer, 1 B. T. A. 214, 216), proximately resulted from, his business, the expense incurred is a business expense within the meaning of section 214 (a), subd. 1, of the act. These rulings seem to us to be sound and the principle upon which they rest covers the present case. If the expense had been incurred in an action to recover a fee from a client who refused to pay it, the character of the expenditure as a business expense would not be doubted. In the application of the act we are unable to

perceive any real distinction between an expenditure for attorney's fees made to secure payment of the earnings of the business and a like expenditure to retain such earnings after their receipt."

Certainly here the suit by the taxpayer "proximately resulted" from its business, and the fee paid under these circumstances was an "ordinary and necessary expense of doing business," within the spirit, if not the letter, of the statute.

The action of the Board as to the item of $286,071.30 paid the Bremen partnership is affirmed, but as to the item of $7,500 paid as attorneys' fees the order of the Board is reversed. It is reversed, also, in so far as it refuses to allow as a deduction errors in the closing inventory aggregating $30,009.31, as to which the respondent confesses error.

Affirmed in part, and reversed in part.