## HUNG YOU HONG v. UNITED STATES.
### No. 6619.

Circuit Court of Appeals, Ninth Circuit.
Dec. 22, 1933.

Charles B. Dwight, of Honolulu, T. H., for appellant.

Sanford B. D. Wood, U. S. Atty., and John Albert Matthewman, Asst. U. S. Atty., both of Honolulu, T. H., and H. H. McPike, U. S. Atty., of San Francisco, Cal., for the United States.

Before WILBUR, SAWTELLE, and GARRECHT, Circuit Judges.

WILBUR, Circuit Judge.

The appellant, Hung You Hong, was accused by the United States Attorney of being a Chinese person unlawfully within the United States, and, after due hearing under the Chinese Exclusion Act (8 USCA § 284, 27 Stat. 25), was ordered deported. From this order appeal is taken. It was shown by the government that the appellant was a laborer of Chinese descent. This showing under the statute required the appellant to "establish, by affirmative proof, to the satisfaction of" the judge who tried the case, "his lawful right to remain in the United States." (8 USCA § 284.)

The appellant introduced a witness named Lum Hop, who testified that he was 78 years old; that he was a Chinese laborer residing in Honolulu where he had resided for 48 years; that he knew the appellant; that appellant's name was Hong Yau; that he first knew him when he was 1 or 2 years old and was living in Maunakea street in Honolulu, and had known him 27 or 28 years; that he knew appellant's father who left Hawaii for China when appellant was 2 or 3 years old; that the mother died shortly after the child was born; that he had not seen the appellant very often; that he saw appellant at his aunt's place; that he knew Hong Shee was his aunt; that he was staying with his aunt when he was 2 or 3 years old; the witness did not know how long he stayed there; he testified that as appellant grew older he did not know his whereabouts; that the boy's father was Hong Me; that the mother was part Chinese and part Hawaiian; that the second time he saw the appellant the child was 8 or 10 years old; that it was several years before he saw him again. On direct examination this witness testified as follows:

"Q. What is his name? A. Hong Yau. Q. Have you ever heard him called Hung Yau Hong? A. Yes; that is possibly a school name. Q. You know him, do you, by the name of Hong Yau? A. Yes."

On redirect he testified as follows:

"Q. Have you ever heard him called Hung You Hong? A. That I don't know."

If this witness did not see the applicant from the time he was 2 years old until he was 8 or 10 years old, and did not see him again until he was 18 or 20 years of age, as his testimony would indicate, it is obvious he would not be able to identify the appellant from his own observation, and there is no suggestion of any identifying mark or peculiarity which would justify a person in identifying a 10 or 12 year old child as the child he had seen when only two years old. The same may be said with slightly less force concerning the identification of a young man of 18 or 20 as the boy of 12 he had known. The testimony of this witness that appellant "is the same person he saw as a little child one or two years old," if honest and straightforward, must have been based upon his conclusions with reference to the identity of the appellant based upon his surroundings or upon statements made by the person in whose custody he was at the time the witness saw him and not because he was able to identify him. It

is at best very weak evidence to establish the fact that the appellant was the child born 30 years before in Hawaii.

The appellant, instead of offering himself as a witness, offered the statements he had made to the immigration officer at the time of his arrest. This evidence was hearsay. It was apparently admitted because the immigration officers had testified that the appellant stated to them that he was of Chinese descent and a laborer, hence other statements made by him to the immigration authorities were also admissible as a part of the declaration of the appellant. Appellant declined to take the witness stand and testify upon the advice of his attorney, although the trial judge suggested the desirability of his testifying.

Appellant stated to the immigration authorities that he did not know either his father or his mother; that he was brought up in the family of Hong Shee, whom he described as his "distant aunt," whose father, he later stated, was a cousin of appellant's father. Appellant knew nothing about his birthplace except what had been first told him by Hong Shee "four or five years ago," that is, when he was about 25 or 26 years old. Asked if that was the first time he knew of his birth in the Hawaiian Islands he replied, "Yes." Appellant stated that he had corresponded with his father who was in China, but had not heard from him for a year and a half before he testified; that in the family of Hong Shee there were four sons and three daughters of Hong Shee who were about his own age. Some of the children of Hong Shee were living in Honolulu at the time of the trial, but none of them was called as a witness. It will be observed that there is no direct testimony that the appellant was born in the Hawaiian Islands. Assuming that there were proof of the relationship of Hong Shee to the appellant other than her statement to him that her father was his father's cousin, because of the testimony of Lum Hop that she was his "aunt," the statement of Hong Shee was admissible as evidence of pedigree, but, under the circumstances such evidence is very weak and inconclusive. It seems incredible that appellant could have lived with Hong Shee until he was 10 years of age and remained thereafter under her guardianship and control without having learned anything from her concerning his birthplace before he was 25 years of age, if she knew that he was born in the Hawaiian Islands. It is not claimed that appellant was taught to believe that Hong Shee was his mother or any relation to him other than that of "distant aunt"

or cousin. In considering the weight and value of this evidence it also should be stated that as early as 1896 a compulsory school law was in force in the Hawaiian Islands requiring the attendance of all children from 6 to 15 years of age (Revised Laws 1915 of Hawaii, § 286, Laws 1896, c. 57, § 24). The laws of Hawaii also required the registration of births, deaths, and marriages (Rev. Laws of Hawaii, § 1211 et seq.), and made it the duty of parents and physicians to report such birth for record within 30 days after the birth of the child (Rev. Laws of Hawaii, § 1224, Laws 1896, c. 50, § 12); and of the ministers and undertakers to report deaths together with "all the information within their knowledge concerning any deceased person if and whenever the registrar shall request the same" (Rev. Laws 1925 of Hawaii, § 1226, Laws 1896, c. 50, § 14), which also made it the duty of ministers performing marriage ceremonies to report the same for record (Laws 1896, c. 50, §§ 15, 1227). These laws were in force at the time of the birth of appellant. The appellant could speak no English. It is the duty of the schools to teach pupils English (Rev. Laws of Hawaii, § 315, Laws 1896, c. 57, § 30).

The appellant produced no record of his birth, no record of the marriage of his father and mother, and no record of his mother's death. He was unable to give his mother's name or the name of any relative living in the Hawaiian Islands or in China other than Hong Shee and his father, and did not know whether or not he had any other relatives. In his examination before the immigration inspector he stated that he did not go to school and did not know why he did not do so. Appellant also stated to the immigration authorities that he had no record to show that he was born in the Hawaiian Islands.

■■ The trial judge rejected the evidence offered on behalf of the appellant as unworthy of belief. He placed his rejection of this evidence on the ground that the appellant could not speak English; that no records were offered to show his birth in the Hawaiian Islands; that the schools of Hawaii were required to instruct pupils in English; and that all children of suitable school age were required to attend such schools, and the further ground that the appellant had refused to take the witness stand, although invited to do so, and had offered a witness who had known him slightly and met him infrequently over a long period of years, when there were available, according to his statement, witnesses who had been intimately acquainted with him

from the date of his birth, and who were sufficiently interested 'in his welfare to accept him into their homes and to provide for his maintenance until he was 10 years of age, thus invoking the familiar rule that where weaker and less satisfactory evidence is produced by a party to whom better and more satisfactory evidence is available, if his testimony is true it must be presumed that such testimony will be against him. As was said by the Supreme Court in Runkle v. Burnham, 153 U. S. 216, 225, 14 S. Ct. 837, 841, 38 L. Ed. 694:

"The doctrine that the production of weaker evidence, when stronger might have been produced, lays the producer open to the suspicion that the stronger evidence would have been to his prejudice was expressly adopted in the case of Clifton v. United States, 4 How. 242 [11 L. Ed. 957]."

In a deportation case, United States ex rel. Vajtauer v. Commissioner, 273 U. S. 103, 111, 47 S. Ct. 302, 305, 71 L. Ed. 560, the Supreme Court quoted with approval from Bilokumsky v. Tod, 263 U. S. 149, 153, 154, 44 S. Ct. 54, 68 L. Ed. 221, as follows:

"Conduct which forms a basis for inference is evidence. Silence is often evidence of the most persuasive character."

The purpose of the legislation requiring the defendants in Chinese deportation cases to take the burden of establishing their right to remain in the United States is to require them to produce the evidence which is peculiarly within their own knowledge or within the knowledge of their friends and acquaintances. In such cases it is virtually impossible for the government to prove that a person was not born within the United States. While it is true that the direct evidence of a competent and credible witness to the fact in controversy would establish the fact in the absence of conflicting considerations, such evidence must always be weighed in the light of the ability of the applicant to produce additional or more satisfactory evidence.

Appellee points out that the brief of the appellant does not comply with the rules of this court in that there is no table of cases, no index of points, and no specifications of error. In view of the fact that the brief is only six pages long, we have examined it. As the only point made is the insufficiency of the evidence to justify the decision of the trial judge, we have ignored the failure of the appellant to specify the error complained of. This is partly because of the fact that we are satisfied that the order of deportation must be affirmed and insistence on enforcing the rule would merely delay decision of the case.

We think that the silence of the appellant, his obvious unwillingness to submit to cross-examination, his failure to produce available corroborating witnesses who could establish his continued residence in the Hawaiian Islands if he had resided therein, and to furnish additional evidence as to his birth therein, justified the trial court in holding that the testimony offered on his behalf was insufficient to overcome the presumption of alienage.

Judgment affirmed.