## WESTLAKE PUBLIC MARKET v. COMMISSIONER OF INTERNAL REVENUE.
### No. 7270.

Circuit Court of Appeals, Ninth Circuit.
Feb. 20, 1934.

292

W. B. McCord and Kerr, McCord & Carey, all of Seattle, Wash. (S. N. Greenleaf, of Seattle, Wash., of counsel), for appellant.

Sewall Key and Helen R. Carloss, Sp. Assts. to Atty. Gen., for respondent.

Before WILBUR, SAWTELLE, and GARRECHT, Circuit Judges.

WILBUR, Circuit Judge.

Petitioner seeks a review of the order of the Board of Tax Appeals made on its application for a reversal of the decision of the Commissioner of Internal Revenue fixing its income tax for the year 1926. The amount of tax involved is $9,505.62. This represents the tax on profit of the petitioner on the sale of a leasehold interest in real estate. The sale was made in 1926, and the price received was $200,000. The question is how much of the purchase price was profit. The petitioner contends that in determining the profit or gain there should be deducted from this selling price the sum of $50,000 which it claims is the cost to it of the lease at the time it was acquired on June 30, 1916. It is conceded that section 204 (a) of the Revenue Act of 1926 (26 USCA §.935) controls and that the basis for determining the gain or loss from the sale in question is the difference between the cost of the property and the price for which the property was subsequently sold. That section expressly so provides: "Sec. 204. (a) The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; except that * * * "

Where the property is acquired after December 31, 1920, section 203 (b) (4) and section 204 (a) of the act, 26 USCA §§ 934 (b) (4), 935, provide a special rule applicable to the transfer of property to a corporation in exchange for its stock. This rule, however, is not applicable in the case at bar because the property was acquired by petitioner prior to December 31, 1920.

It appears from the statement of the evidence that prior to April 4, 1916, Thomas Boyd owned and conducted a market in Seattle, Wash., known as the Westlake Public Market; that the building in which the business was conducted was sold and Mr. Boyd entered into negotiations for another market site; that on April 4, 1916, Thomas Boyd and his attorney, Ivan Hyland, caused the petitioner to be incorporated; Boyd and Hyland were the sole trustees of the corporation and managed its concerns and affairs until June 30, 1916. On April 20, 1916, Boyd secured the fifty-year lease in question from Samuel L. Bowman and wife upon certain vacant lots situate in the city of Seattle, Wash., and immediately began the erection of a new market building thereon. The only considerations for the lease were the covenants of the lessee therein contained, no bonus being paid for the lease. After the erection of the market building was begun, Boyd, on June 30, 1916, transferred the lease to the petitioner, a newly formed corporation, in consideration of all its capital stock which was issued to Thomas Boyd and his wife. The corporation had no property and the stock had no value, and after transfer merely represented whatever value there was in the leasehold. The Board of Tax Appeals held that the lease cost petitioner nothing. It is conceded by both parties that the cost to the petitioner is a question of fact for the determination of the Board of Tax Appeals [see Keystone Steel & Wire Co. v. Commissioner (C. C. A.) 62 F. (2d) 458; Fidelity Storage Corp. v. Burnet, Commissioner, 61 App. D. C. 121, 58 F.(2d) 526; Matern v. Commissioner (C. C. A.) 61 F.(2d) 663; American Sav. Bk. & Trust Co. v. Burnet, 45 F.(2d) 548 (C. C. A. 9); Atlantic Bank & Trust Co. v. Commissioner (C. C. A.) 59 F.(2d) 363; Avery v. Commissioner (C. C. A.) 22 F.(2d) 6, 55 A. L. R. 1277; Refling v. Burnet (C. C. A.) 47 F.(2d) 859], but the petitioner contends that, because there is no substantial evidence to support the finding of the Board of Tax Appeals, it is erroneous as a matter of law. Petitioner also contends that the finding of the Board of Tax Appeals is against the great weight of the evidence but that question is not for our consideration. The decisions cited by the

petitioner to support its contention that findings of a lower court will be set aside when they are against the great weight of the evidence have no application to an appeal from a decision of the Board of Tax Appeals. It has been uniformly held that, if there is substantial evidence to support the conclusion of the Board of Tax Appeals on a question of fact, this court cannot interfere.

The position of the petitioner as to the sufficiency of the evidence may be summed up as follows:

The petitioner having acquired the lease in consideration of the issuance of its stock, the stock deriving its value from the leasehold conveyed to the corporation and representing that value, it must be held that the cost of the lease to the corporation is the value of its stock after the transfer of the lease to the corporation which is in turn the fair market value of the leasehold transferred to the corporation by Boyd. On this basis it is claimed that the only evidence adduced before the Board as to the value of the leasehold was that of three real estate men who testified that in their opinion the leasehold was worth $50,000. It is therefore claimed that it was the duty of the Board of Tax Appeals to accept this uncontradicted testimony.

It appears from the opinion of the Board that they rejected this testimony for reasons which will be presently stated. If there was substantial evidence to support the conclusion of the Board of Tax Appeals it is entirely immaterial so far as this court is concerned whether there is other evidence which, if believed, would support or require a contrary conclusion. We will therefore inquire first whether or not there was substantial evidence to support the finding of the Board of Tax Appeals.

■■ In the first place it should be noted that the decision of the Commissioner on a question of fact is prima facie correct and puts the burden of establishing the fact to be otherwise on the petitioner. Reinecke v. Spalding, 280 U. S. 227, 50 S. Ct. 96, 74 L. Ed. 385; Alexander Sprunt & Son v. Commissioner (C. C. A. 4) 64 F.(2d) 424; Matern v. Commissioner (C. C. A. 9) 61 F.(2d) 663; Burnet, Commissioner, v. Houston, 283 U. S. 223, 51 S. Ct. 413, 75 L. Ed. 991; Lightsey v. Commissioner (C. C. A.) 63 F. (2d) 254. If we were here faced with the naked problem of whether or not this presumption alone is sufficient to support a finding as against positive testimony to the contrary, we would have a situation somewhat similar to that which frequently arises in deportation cases and which we have recently considered in a Chinese exclusion case. Hung You Hong v. United States (C. C. A. 9) 68 F.(2d) 67, filed December 22, 1933. In such cases the appellate court has confined itself to the question of whether or not there was a rational basis for the rejection of positive testimony which would support a finding in favor of the alien. There are a multitude of cases on this subject, but we think it unnecessary to cite them. In the case at bar the presumption in favor of the finding of the Commissioner does not stand alone, but is fortified by the admitted fact that the finding of the Commissioner is true so far as the cost of the lease to Boyd is concerned. It cost him nothing. In addition to this, at the time of the transfer of the leasehold to the petitioner, the parties did not claim that any profit had been made by Boyd from the transaction or that any consideration of value passed from the corporation to Boyd, nor did Boyd make any income tax return of the transaction on which he now claims, on behalf of the petitioner, that he then made the sum of $50,000. This we think is substantial evidence to support the finding of the Board of Tax Appeals that there was no cost to the petitioner for the leasehold, and consequently the finding of the Board of Tax Appeals must be sustained and its order affirmed.

■■ As stated above, the contention of petitioner is that the cost of the lease to it was the value of its stock after the transfer of the lease to it, which would be the fair market value of the leasehold transferred to it by Boyd, and constituted its only asset. In answer to this contention it is pointed out by the Commissioner that, at the time the lease was obtained, it was acquired by the promoters and trustees of the petitioner and that at the time of such acquisition the petitioner was therefore the equitable owner of the leasehold and the transfer of the lease to the petitioner merely vested the legal title thereof where it equitably belonged. Furthermore, the promoters of the corporation were not permitted by law to take advantage of the corporation by making a profit of $50,000 on the transfer of the legal title of the lease to its equitable owner. We see no answer to these propositions, and none has been made by the petitioner.

Furthermore, the Board of Tax Appeals was justified in rejecting the testimony of the experts as to the leasehold value, for it

appears that this testimony was wholly speculative and of no evidentiary value and was based in part upon the purely speculative assumption that the value of the leased land would be $534,333.33⅓ from the years 1956 to 1966. To explain this situation more fully it should be stated that the testimony of the experts was that the real estate leased was worth $150,000 at the time the lease was executed in April, 1916. The net rental for the first five years was $500 per month or $6,000 per annum. It is therefore argued by the experts that this would be 6 per cent. on a capital investment of $100,000 instead of $150,000, and that the leasehold represented the difference between this capitalization of the rent ($100,000) and the market value of the property ($150,000). The lease fixed the rent for the next five years at $9,000 per year, for the next five years at $12,000 per year, the next five years at $16,000 per year, the next five years at $20,000 per year, the next five years at $25,000 per year, the next ten years at $30,000 per year, and the next ten years at $35,000 per year. This rental is fixed in the lease upon the theory that the value of the property would double in the first ten years, more than double again in the next fifteen years, and increase 20 per cent. upon the latter value in the next ten years, and increase on the latter value 17½ per cent. in the next ten years. While the testimony of the experts was that they did not regard this method of stepping up the rents as unreasonable, no evidence was given as to sales of leases with the identical or similar provisions concerning the stepping up of the rent or as to the market value of such a lease.

In this connection it should be stated that the Board of Tax Appeals in its opinion points out that, although the theory of the expert witnesses is that the value of the lease is the difference between the value of the property ascertained by capitalization of the rents on a basis of 6 per cent. and the actual market value of the real estate leased, the rentals agreed to be paid by the tenant during the term amounted to 14.48 per cent. on a capital of $150,000. This makes it apparent that the experts were basing their testimony not on the present market value of the land or of a leasehold therein, but upon pure speculation as to the future value of the land.

While it is quite true that, if there were a market value established for the purchase and sale of leases of vacant property with similar or identical provisions for the increase of the rent, such evidence would be admissible and should be given whatever weight the Board considered it entitled to, we hold that the Board was not required to accept this testimony as against the admitted fact that the lease cost nothing in April, 1916, and against the presumption in favor of the finding of the Commissioner.

Order affirmed.