## NATIONAL BANK OF SOUTH CAROLINA OF SUMTER v. AMERICAN SURETY CO. OF NEW YORK.

### No. 3508.

Circuit Court of Appeals, Fourth Circuit.

Oct. 3, 1933.

Raymon Schwartz and R. O. Purdy, both of Sumter, S. C., for appellant.

Robert McC. Figg, Jr., of Charleston, S. C. (Hyde, Mann & Figg, of Charleston, S. C., on the brief), for appellee.

Before NORTHCOTT and SOPER, Circuit Judges, and GLENN, District Judge.

SOPER, Circuit Judge.

The National Bank of South Carolina of Sumter brought an action at law against American Surety Company of New York in the District Court to recover a loss it had sustained through the disappearance of three United States Liberty bonds of the value of $3,103.88. The action was based upon a surety bond, whereby the surety company agreed to indemnify the bank in the sum of $25,000 against direct loss of any of its money or securities through any dishonest act of its employees or through robbery, burglary, or larceny while the property was on the premises of the insured. It was alleged that the bonds were stolen some time between January 13, 1931, and January 31, 1931, while they were in the possession of the bank on its premises in Sumter, S. C. Liability was denied, and, the case coming on for hearing before court and jury, evidence was taken, consisting of the testimony of officers and employees of the bank for the plaintiff and the plaintiff's proofs of loss offered by the defendant. At the conclusion of the evidence, each party moved for a directed verdict on its behalf, and the District Judge, concluding that the evidence was as consistent with the hypothesis of loss by accident or misplacement as with the hypothesis of theft, directed a verdict for the defendant. From the judgment thereon, this appeal is taken.

The law is well settled in the federal courts that, when both parties move for a directed verdict, they assume the facts to be undisputed, and in effect submit to the trial judge the determination of the inferences proper to be drawn therefrom; and, upon a review, a finding of fact by the judge must stand if the record discloses substantial evidence to support it. Williams v. Vreeland,

250 U. S. 295, 298, 39 S. Ct. 438, 63 L. Ed. 989, 3 A. L. R. 1038. Hence our only function in this case is to examine the record in order to determine whether the evidence is sufficient in substance to sustain the inference that the loss of the bank was occasioned by some cause not covered by the terms of the bond. The District Judge called attention to the rule recently approved by the Supreme Court in Pennsylvania Railroad Company v. Chamberlain, 288 U. S. 333, 53 S. Ct. 391, 77 L. Ed. 819, that when proved facts give equal support to each of two inconsistent inferences judgment as a matter of law must go against the party upon whom rests the necessity of sustaining one of these inferences as against the other before he is entitled to recover. The burden of proof in the pending case was on the plaintiff, and since the cause of the loss seemed to the District Judge to be conjectural only, and he could not find that the evidence tending to show theft was stronger and more convincing than that which indicated loss from some other cause, he felt obliged to reach the decision indicated.

The evidence showed that on January 13th the bank received the Liberty bonds which it had purchased for delivery to a customer, and that, when the customer called for them on January 31, they could not be found. In the meantime they were in the custody of the receiving and paying teller of the bank. He kept them in an envelope in a metal box, together with other bonds of the bank similarly inclosed; all of the envelopes being held together by a rubber band, so as to form one package. The Liberty bonds were coupon bonds of a larger size, and hence the envelope containing them was easily distinguishable in appearance from the envelopes containing the other bonds which were registered noncoupon bonds. The metal box was used not merely for the bonds, but also as a receptacle for coins which were kept in small wooden boxes, placed on top the bonds. It was the custom of the teller in the morning to bring the metal box from the vault to his cage and to remove the coin boxes and to place them on his desk, leaving the bundle of bonds in the metal box which he then placed on the floor beneath. This practice was adopted so as to make it unnecessary for the teller to leave his cage and go to the vault if a customer should call for a bond or the cashier should desire to inspect them.

The cashier's desk was alongside the teller's cage, and, for the convenient passage of papers between the two officials, there was an opening in the intervening screen in which a wire basket was inserted. When a customer called upon the cashier for a bond, the teller would hand the cashier the entire package through the opening, and sometimes the package of bonds would remain on the cashier's desk for a substantial period of time. Sometimes the bundle of bonds would be passed back and forth between the teller and the cashier several times a day. During a portion of the interval between January 13 and January 31, the cashier's office was separated from the public lobby merely by a three-foot marble partition, but later a glass partition was erected on top of the marble partition, and a glass door, separating the office from the lobby, was put in the place. Workmen were engaged in this work for a week or ten days, going in and out of the cashier's office, and having occasion also to go into the teller's cage. They generally worked after 2 o'clock in the day, and sometimes after all of the employees of the bank, except one, had gone for the day. Customers and employees of the bank had access to the cashier's office at all times, and often the cashier was called away from his desk, leaving his papers upon it.

Two or three days before January 31, the teller noticed that some of the bonds seemed to be missing from the package and mentioned the matter to the cashier; but business at the moment interfered with an inspection, and the loss was not discovered until the customer called for the bonds. Then a thorough search was made in every part of the bank without success. Customers to whom bonds, taken from the bundle, had been previously delivered, were questioned, and the contents of their safe deposit boxes were examined, but no trace of the bonds was found. An examination of the vault disclosed that it was in bad shape and that a lot of papers and other material were in confusion upon the floor. These were cleaned out, but the bonds were not found.

The bank employed a colored janitor who had access to all parts of the building and had the duty of cleaning it daily. He testified that bonds look something like money, that they come in manilla envelopes and that it was his custom, if he saw envelopes on the floor, to look into them to see if they contained anything of value. He kept discarded paper and trash in a box in the bank for several days after picking them up, burning them in the winter time, and in the summer throwing them away when the box became full.

This testimony disclosed ample opportunity for the theft of the bonds, for, by reason of the careless manner in which the bonds

were handled, employees, customers, or workmen could have had access to them at one time or another. But, on the other hand, the evidence also gave support to the theory of careless misplacement. The bonds were kept most of the time in a box on the floor in a bundle with other bonds, all of which were of a different size; they were handed back and forth several times a day between the teller and the cashier; and the place was swept out daily by an employee, whose knowledge of valuable papers could not be relied upon with certainty. As the appellant itself states in its brief in this court, reasonable minds may fairly differ as to whether the bonds were stolen or not. In such a situation, the question is one of fact to be determined ordinarily in a jury case by the jury. Here, however, the decision was withdrawn from the jury and submitted to the judge by the action of both parties in requesting a peremptory instruction, and the judge, weighing the facts, concluded that the inferences to be drawn therefrom were so speculative and uncertain that the plaintiff bank had failed to carry the burden imposed upon it by the established rule of law.

The judgment of the District Court must therefore be affirmed.