## COMMISSIONER OF INTERNAL REVENUE v. HALES.
### No. 5.187.

Circuit Court of Appeals, Seventh Circuit.
May 6, 1935.

Frank J. Wideman, Asst. Atty. Gen., Sewall Key and Warren F. Wattles, Sp. Assts. to Atty. Gen., and John MacC. Hudson, of Washington, D. C., for petitioner.

Edward Sonnenschein, Herbert M. Lautmann, I. E. Ferguson, and Leonard M. Rieser, all of Chicago, Ill., for respondent.

Before EVANS, SPARKS, and ALSCHULER, Circuit Judges.

EVANS, Circuit Judge.

Petitioner denies, and respondent affirms, the existence of sufficient evidence to sustain the finding of the Board of Tax Appeals to the effect that a sale by him of notes on December 24, 1926, at a loss of $42,200 was bona fide. This appeal reviews the determination of this single issue.

The evidence may be described as conflicting. Perhaps it would be more accurate to say that the assertions of honest intention and good faith were opposed by facts which gave rise to contrary inferences. Petitioner's evidence standing alone strongly supports his contention. If this were a fact finding body instead of a reviewing court, on his showing, we would be inclined to agree with him. His case, however, is disputed by the oral testimony of respondent which is confirmed by other evidence. In such a situation, we are not justified in disturbing a direct finding by the Board on a single fact issue, the importance of which was fully appreciated.

Briefly stated, the facts are as follows: In 1919, respondent acquired 619 shares of common stock and an equal amount of preferred stock of the Collis Products Company at a cost of $69,947. In August, 1926, he acquired through purchase from his sister-in-law and from his wife, 165 more shares of each class of this stock. On August 3, 1926, he sold to Collis all of his stock in this company, for $156,800, taking three promissory notes, the first two for $52,000 each and the third for $52,800, drawing interest at 6 per cent. and payable in one, two, and three years. The maker of the notes deposited the stock thus purchased as collateral. He also agreed to pay certain sums derived from another venture, the amounts of which were uncertain.

In December, 1926, respondent sold the three notes which had been then reduced by the payment of $23,599.60 to his sister-in-law for $91,000. She, in turn, gave her personal note for this amount. Her note was admittedly worth its face, she being a person of unquestionable financial responsibility. Respondent repurchased the notes from his sister-in-law in September or October, 1927, after further payments of $44,970 had been made. The balance due on the notes was later paid in full.

Respondent's income tax return included the sum of $53,853 which represented the amount of the profit on the 1926 sale of the stock of Collis Products Company. He claimed the deduction of a loss of $42,200 which represented the difference between the face value of the Collis notes at the time he sold them and the $91,000 note he took from the purchaser.

The Collis Company had been a prosperous concern, and its balance sheet showed it to be solvent. Between August 3 and December 31, 1926, it paid a 50 per cent. cash dividend upon its $300,000 of common stock. Its taxable income for the same year was $241,055.09. Its surplus and undivided profits on December 31, 1926, were $273,169.86, after its good will had been reduced by $150,000.

Respondent testified that he sold the stock in the company after a difference in policy management had arisen between him and Collis; that he sold the stock by him acquired from his wife and sister-in-law at the same price he paid them. He knew of the payment of the 50 per cent. dividend, and he had also been advised that from August to September the company's business had been conducted at a loss of $20,000. From these and other facts he concluded that the security back of the notes had been somewhat impaired in value. He also gave evidence, which was fully corroborated, to the effect that his sister-in-law, after purchasing the notes, became seriously ill and suffered a nervous breakdown; that she was in two sanitariums and her doctor advised respondent that it would lessen her worries and anxieties if she were relieved from liability upon her outstanding note. Respondent therefore repurchased the notes he had sold her and canceled the note he held against her. He testified that his sale to his sister-in-law was—"without strings" and he was under no obligation to repurchase the notes from her—that he made such repurchase solely because of her health.

In disposing of the case the Board of Tax Appeals said:

"* * * Without entering into a detailed discussion of the various arguments advanced by the parties * * * we think * * * that the preponderance of the evidence supports the view that the transaction was what it purported to be, an actual bona fide sale. To hold otherwise would require us to ignore a substantial portion of the petitioner's testimony including his testimony that there were no 'strings' tied to the transaction and that there was no agreement between him and G. M. Merchant whereby he was subsequently to reacquire the notes. * * * In view of the serious nervous breakdown of G. M. Merchant after the transaction and the worry she had with respect to the loss that she anticipated she would sustain on the notes it appears natural and plausible for the petitioner to reacquire the notes especially since her physician had advised him that such action would relieve her mind of this worry. * * * we are of the opinion that the transaction here in controversy was bona fide and therefore hold that the petitioner was entitled to the deduction taken."

Such a finding must be given controlling weight. F. G., Inc., v. Commissioner (C. C. A.) 47 F.(2d) 541.

The order of the Board of Tax Appeals is affirmed.