KEHOE v. COMMISSIONER OF INTERNAL REVENUE.

No. 6709.

Circuit Court of Appeals, Third Circuit.

June 27, 1939.

BIGGS, Circuit Judge, dissenting.

———◆———

Leo W. White, of Pittston, Pa., R. M. O'Hara, of Washington, D. C., W. H. Gillespie, of Pittston, Pa., and Robert T. McCracken, of Philadelphia, Pa., for petitioner.

James W. Morris, Asst. Atty. Gen., and Sewall Key and Earl C. Crouter, Sp. Assts. to Atty. Gen., for respondent.

Before DAVIS, BIGGS, and BUFFINGTON, Circuit Judges.

BUFFINGTON, Circuit Judge.

This is a petition to review the decision of the United States Board of Tax Appeals. The Commissioner of Internal Revenue has assessed the petitioner, John Kehoe, with a deficiency in tax for 1925 of $208,043.36, plus a penalty of $108,803.-61. The Board of Tax Appeals confirmed the Commissioner and dismissed Kehoe's appeal.

The fact situation presents no dispute. The petitioner's income tax for 1925 is involved. Twice he paid, without apparently any protest. His first return filed March 15, 1926, showed gross income of $27,865.61 and a net taxable income of $19,198.33 on which a tax of $194.56 was computed and paid. In September 1927 agents of the Commissioner made an examination and investigation of the petitioner's income for 1925. As a result he was notified of an additional tax due of $9,563.86, based on an increase in taxable income of $53,990.46. At this point it is significant to note there is no evidence to indicate the basis for these figures, how they were arrived at, what was the source of income heretofore not reached or reported; nor is there evidence of the gross figures, such as receipts and disbursements or gross or net income. Moreover, the agent of the Revenue Department who made the examination was not called by the government. The petitioner, however, appeared satisfied with this additional assessment thus made which reached him October 20, 1927, and was by him paid. He also executed a waiver of appeal to the United States Board of Tax Appeals. Following this an agreement in writing under Section 1106(b) of the Revenue Act of 1926 was executed. It was approved by the Acting Secretary of the Treasury on January 27, 1928 and became final and conclusive on both taxpayer and Commissioner under the terms of the Act.[1]

Several years later, however, the Commissioner notified the petitioner that his return for 1925 would be re-examined. This was followed by a letter dated February 24, 1932, determining the deficiency

---

[1] "Sec. 1106(b). If after a determination and assessment in any case the taxpayer has paid in whole any tax or penalty, or accepted any abatement, credit or refund based on such determination and assessment, and an agreement is made in writing between the taxpayer and the Commissioner, with the approval of the Secretary, that such determination and assessment shall be final and conclusive, then (except upon a showing of fraud or malfeasance or misrepresentation of fact materially affecting the determination or assessment thus made) (1) the case shall not be reopened or the determination and assessment modified by any officer, employee, or agent of the United States, and (2) no suit, action, or proceeding to annul, modify, or set aside such determination or assessment shall be entertained by any Court of the United States." 44 Stat. 113.

tax for 1925 at $208,043.36, plus a fraud penalty of $108,803.61, based on an alleged income of $890,000. The appeal of Kehoe, the petitioner, to the United States Board of Tax Appeals, and the subsequent hearing developed the circumstances and facts responsible for this additional deficiency assessment.

We here note that the Board was warranted, in finding that Kehoe, the petitioner, had illegally operated a brewery known as Bartels, during the year 1925, through a permit obtained by one P. F. McGowan, who now informed against Kehoe, McGowan was merely a straw-man for the illegal manipulations of Kehoe, and during the year 1925, he sold "high powered" beer, exceeding the limitation of alcoholic content, amounting to $890,000, concealing his own identity as the real operator. Proof by railroad records was produced to show illegal activity in sales of beer not covered by the permit of P. F. McGowan.

Were the issue here involved the revocation of the permit to operate the brewery on ground of illegal activity, there could be no hesitation in saying that a case had been made out. Were the issue one of conspiracy between Kehoe and McGowan to violate the National Prohibition Act, the answer again would be that the case against them was established. But the issue here involved is altogether different. It is whether or not the closing agreement executed by the Commissioner and the taxpayer and approved by the Acting Secretary of the Treasury on January 27, 1928 was procured by fraud or malfeasance or misrepresentation of fact.

■ The Revenue Act of 1926, c. 27, 44 Stat. 113, provides that a closing agreement shall be "final and conclusive" in the absence of fraud. The purpose of the statute is the commendable one of terminating disputes and settling controversy. Judge Woodrough in Wolverine Petroleum Corporation v. Commissioner of Internal Revenue, 8 Cir., 75 F.2d 593, 595, says: "The purpose of the statute authorizing closing agreements is to enable the taxpayer and the government finally and completely to settle all controversies in respect of the tax liability for any previous taxable period, and to protect the taxpayer against the reopening of the matter at a later date * * * to facilitate the settlement of many items affecting a taxpayer's liability, the policy has been to broaden, rather than limit, the scope of these settlements."

■ Congress reenacted the provision of this section in subsequent revenue acts (See: 26 U.S.C.A. § 1660(b), realizing the wisdom of allowing and encouraging final compromises and settlements. This enactment should not lightly be disregarded by the courts since it has always been the policy of the law to encourage compromises and settlements. In Miller v. Pyrites Co., 4 Cir., 71 F.2d 804, 810 (certiorari denied, 293 U.S. 604, 55 S.Ct. 121, 79 L.Ed. 696), the court said: "Compromises of disputed claims are favored by the court and, when fairly entered into, are final." Hennessy v. Bacon, 137 U.S. 78, 11 S.Ct. 17, 34 L.Ed. 605; Williams v. First National Bank, 216 U.S. 582, 595, 30 S.Ct. 441, 54 L.Ed. 625.

■ The Commissioner, therefore, had the burden of proof to show that the closing agreement was entered into either through fraud, malfeasance or misrepresentation of fact. This burden was affirmatively placed on the Commissioner by the Revenue Act of 1928, c. 852, § 601, 45 Stat. 872, 26 U.S.C.A. § 612, which reads: "In any proceeding involving the issue whether the petitioner has been guilty of fraud with intent to evade tax, where no hearing had been held before May 29, 1928, the burden of proof in respect of such issue shall be upon the Commissioner."

■ The Commissioner at the hearing on the appeal before the Tax Board assumed the burden. As stated above, the proofs showed that the taxpayer, Kehoe, was part and parcel of a scheme to evade the National Prohibition Act in 1925. He showed that Kehoe was the actual operator of the brewery and large sums of money came into his hands through the sale of high-powered beer. But how does that prove that the closing agreement was entered into through the fraud of the taxpayer, Kehoe? The Commissioner took no steps to show that when the settlement was made the income from the illegal operation of the brewery was not taken into consideration. It was clearly within the power of the Commissioner to introduce evidence of the closing agreement and the nature of the income on which the additional tax was based. The failure to produce such testimony would clearly warrant the inference that if such testimony were produced it would be unfavorable to the

Commissioner. Runkle v. Burnham, 153 U. S. 216, 14 S.Ct. 837, 38 L.Ed. 694; Chicago & N. W. R. Co. v. Kelly, 8 Cir., 84 F.2d 569, 572; The Marsodak, 4 Cir., 94 F.2d 339, 343. In Mammoth Oil Co. v. U. S., 275 U.S. 13, 48 S.Ct. 1, 9, 72 L.Ed. 137, Mr. Justice Butler quotes Lord Mansfield in Blatch v. Archer, (Cowper, 63, 65): "It is certainly a maxim that all evidence is to be weighed according to the proof which it was in the power of one side to have produced, and in the power of the other to have contradicted." And our Supreme Court has held, Runkle v. Burnham, 153 U.S. 216, 14 S.Ct. 837, 841, 38 L.Ed. 694:

"The doctrine that the production of weaker evidence, when stronger might have been produced, lays the producer open to the suspicion that the stronger evidence would have been to his prejudice was expressly adopted in the case of Clifton v. United States, 4 How. 242 [11 L.Ed. 957]."

■ Considering the policy of the law to favor compromises and settlements, it was incumbent on the Commissioner to show that the income from the operation of the brewery was not considered when the additional assessment was made. That an investigation of Kehoe's liability was made, is the fact. That a written, statutory settlement was made, is also the fact. It follows, therefore, that the presumption is that all his tax liability was settled. That additional tax liability of some $53,000 was ascertained and settled, is a fact. There is no proof that other than the brewery, any other liability existed or was claimed. If this increased liability of $53,000 was not brewery liability, what was it? Moreover, there is nothing in the record to show that the income of which McGowan informed the government in 1930 was not considered in 1927, and paid for, and closed by agreement approved by the Secretary of the Treasury in 1928. Considerable income was considered by the government in the 1927 settlement to have warranted an additional assessment of $9,563.86 and an additional gross income of $53,000.

■ The very most that can be said for the testimony produced before the Board of Tax Appeals is that it permits two inferences to be drawn; one, that income was fraudulently omitted from the deficiency assessment on which the closing agreement was based; secondly, that the income was considered at the time of the deficiency assessment and led to the figure of $53,990.46, additional taxable income on which an additional tax of over $9,000 was paid and closing agreement signed, executed and approved by the Secretary of the Treasury. The law is clear that if facts give equal support to each of two inconsistent inferences, judgment must go against the party that has the burden of proof. This principle is stated by Mr. Justice Sutherland in Pennsylvania R. Co. v. Chamberlain, 288 U.S. 333, 339, 53 S.Ct. 391, 393, 77 L.Ed. 819, in commenting on the evidence of that case: "We, therefore, have a case belonging to that class of cases where proven facts give equal support to each of two inconsistent inferences; in which event, neither of them being established, judgment, as a matter of law, must go against the party upon whom rests the necessity of sustaining one of these inferences as against the other, before he is entitled to recover."

■ To the same effect is New York Life Ins. Co. v. King, 8 Cir., 93 F.2d 347, 353, where Judge Sanborn said: "* * * evidence which is equally consistent with two hypotheses, under one of which a defendant is liable, and under the other of which it is not liable, supports neither hypothesis." National Bank v. American Surety Co., 4 Cir., 67 F.2d 131; Liggett & Myers Tobacco Co. v. De Parcq, 8 Cir., 66 F.2d 678. And this is particularly so in tax cases where, if there is doubt, such doubt should be resolved in favor of the taxpayer. It is no answer to say that the taxpayer could have called the government agent, for the burden is on the government to establish its case before the taxpayer is called on to answer. As the proofs stood, and now stand, we are of opinion the government has not made out its case. There is no ground of proven fact to support a finding that the now alleged brewery liability was not included in the settlement, in the $53,000 additional gross income of Kehoe. There is no proof of any other alleged liability on the part of Kehoe which led to this large addition. It will be noted that the Tax Board nowhere considered or discussed the two underlying, basic and important questions —first, what tax liability was considered and involved in the settlement made in pursuance of the revenue officer's examination. Second, on what liability, if not for the brewery, was the additional $53,000 predicated? And lastly, and all

important, the failure of the government to call its agent and show by him, if it could, that the brewery liability was not involved in the settlement.

At best, the proof of the government leaves the validity of the settlement in doubt, and where there is doubt, the law favors the taxpayer. We find no affirmative proof that at the time of the settlement, as also the closing agreement, no brewery income was disclosed, and the revenue agent who could have proven this was not called. If the government had this proof available, why was it not made? The pleadings were such as to require affirmative proof on its part. Thus the government's averment that "said brewery by reason of the fact that said John Kehoe wilfully, knowingly and deceitfully withheld any and all information from the respondent concerning the receipt of said gains, profits and income from the operation of said brewery misled the respondent by representing that he had no other income than that allegedly reflected in the so-called agreement as to final determination," was traversed and denied under oath by Kehoe, as follows: "That at the time of the execution of said final agreement, or prior or subsequent thereto, John Kehoe wilfully, knowingly and deceitfully withheld from respondent any information concerning income alleged to have been derived by him during the year 1925 from the operation of a brewery known as P. F. McGowan Brewery."

When the government is a litigant, it stands on the same basis as any other litigant and it is clear to us that if this was a case between private persons and one party was seeking to set aside a settlement made by the parties, he could not succeed where the failure to furnish was such as in the present case. So regarding, the decree of the Tax Board is vacated.

BIGGS, Circuit Judge (dissenting).

The petitioner, the taxpayer, in March, 1926, filed a Federal income tax return for himself and his wife for the calendar year 1925. Upon this return he reported a total income of $27,865.61 and net income of $19,198.33 which he stated had been received by him from real estate operations, dividends, interest and "election bets". Upon this return he reported a tax due to the United States in the sum of $194.56. This sum was paid by him. It should be pointed out that upon the return referred to the petitioner did not state the nature of his business, the line of the return upon which this information was to be written being left blank by him. Thereafter an investigation was made by the Bureau of Internal Revenue and the Commissioner upon October 20, 1927, sent to the petitioner a deficiency notice showing a deficiency in tax for the calendar year 1925 in the amount of $9,563.86. This deficiency was duly assessed and was paid by the petitioner upon November 15, 1927. A closing agreement was then entered into between the Commissioner and the petitioner and by this agreement the total liability of the petitioner for tax and interest for the year 1925 was fixed and determined. The agreement so made between the Commissioner and the petitioner was approved by the Acting Secretary of the Treasury on January 27, 1928.

Thereafter, early in June, 1929, one Patrick F. McGowan informed the Bureau of Internal Revenue in respect to the operations of a brewery known as McGowan's Brewery, at Edwardsville, Pennsylvania. It appears clearly from the record before us that the taxpayer was in fact the real owner and operator of the brewery which, ostensibly manufacturing near beer, was in fact brewing and selling real beer throughout the whole of the year 1925. McGowan was the figure-head of the brewery and acted as a cover for the petitioner. The record shows instances where the petitioner, afraid that his relationship to the brewery would be discovered through his connection with McGowan, sent the latter out of town and rewarded him for silence.

McGowan and the petitioner later fell out because of the following circumstances. McGowan was indicted by the Federal grand jury in the Middle District of Pennsylvania for alleged violations of the National Prohibition Act. The petitioner, concerned lest his own status be disclosed because of the pressure of the indictment upon McGowan, promised to reward McGowan with a substantial compensation if he would go through the trial of the criminal proceedings without disclosing his relation to the petitioner as the latter's agent. McGowan did not have to stand trial. See United States ex rel. McGowan v. Glass, 3 Cir., 25 F.2d 941, overruling United States v. Mayer, D.C., 22 F.2d 827. The petitioner thereupon reached the conclusion that McGowan had rendered no service to him of value and re-

fused to give McGowan the promised compensation. McGowan became angry with the petitioner and proceeded to inform the Bureau of Internal Revenue in detail concerning the operation of the brewery and the petitioner's connection with it.

It appears that the brewery kept two sets of books. One showed its transactions in respect to near beer and the other set showed its dealings in real beer. McGowan admitted that he had defrauded and deceived the Government and had himself violated the prohibition laws. He made plain, however, that he did so upon the instructions of the petitioner. It also appears that approximately 885 carloads of real beer were shipped from the brewery over the rails of the Delaware and Lackawanna Railroad Company in the year 1925, and that the freight on these shipments amounted to over $98,000. From the record, it appears that each carload of beer contained approximately 100 barrels of beer and that these barrels were sold generally at a price not less than $12 a barrel. These shipments represented sales in excess of $1,000,000.

Other witnesses corroborated the testimony of McGowan and gave pertinent evidence upon the issues presented. There remains no doubt that the petitioner was engaged in the manufacture and sale of beer upon a very large scale within the taxable period designated by the United States.

The Board of Tax Appeals in its opinion states as follows: "We have found that the petitioner, with intent to evade tax, failed to report in his return income received from the operation of the brewery and on the record it is apparent that he made no disclosure of such income at the time of executing the closing agreement, nor at any other time. While the filing of a return and the signing of a closing agreement are separate and distinct and fraud in one does not necessarily indicate fraud in the other, the same or a continuing act, that of wilfully concealing income, may be, and on the facts in this case, is a sufficient basis for finding that the return was fraudulent with intent to evade tax and further that there was a misrepresentation of a material fact in the execution of the closing agreement."

The Board in its opinion also stated, "He (the petitioner) not only failed to disclose and report in his return the income from the operation of the brewery, but

has at all times denied and still denies any connection whatever with its operation."

If these findings are supported by substantial evidence and are neither capricious nor arbitrary, the decision of the Board should be affirmed by this court. In my opinion the findings of the Board are supported fully by the record and it is apparent that the petitioner fraudulently failed in the first instance to return his true income upon the return filed in 1926 for the calendar year 1925, that this fraud continued throughout the time of the 1927 assessment and the execution of the closing agreement, and as a matter of fact lasted throughout the hearings before the Board of Tax Appeals where the petitioner still took the position that he was not the owner and operator and the true party in interest in the brewery.

The Revenue Act of 1926, c. 27, 44 Stat. 9, 113, provides:

"Sec. 1106.

"(b) If after a determination and assessment in any case the taxpayer has paid in whole any tax or penalty, or accepted any abatement, credit, or refund based on such determination and assessment, and an agreement is made in writing between the taxpayer and the Commissioner, with the approval of the Secretary, that such determination and assessment shall be final and conclusive, then (except upon a showing of fraud or malfeasance or misrepresentation of fact materially affecting the determination or assessment thus made) (1) the case shall not be reopened or the determination and assessment modified by any officer, employee, or agent of the United States, and (2) no suit, action, or proceeding to annul, modify, or set aside such determination or assessment shall be entertained by any court of the United States."

That portion of Section 1106 quoted above and contained within the brackets constitutes matter added to the Revenue Laws by the enactment of Section 1312 of the Revenue Act of 1921. See 42 Stat. 313. The purpose of the addition within the brackets is too plain to require explanation. It is sufficient to state that these words were added in order that a closing agreement might be set aside if fraud upon the part of the taxpayer existed at the time of the execution of the agreement.

In my opinion there is no doubt that the Commissioner has sustained the bur-

den placed upon him by the Act and has shown fraud and malfeasance upon the part of the petitioner in respect to a question of fact, "* * * materially affecting the determination of assessment * * *" made against him.

It is fundamental that "* * * Fraud is always a question of fact to be determined by the court or jury upon a careful scrutiny of the evidence before it." Smith v. Vodges, Assignee, 92 U.S. 183, 184, 23 L.Ed. 481. See also Warner v. Norton, 20 How. 448, 460, 15 L.Ed. 950; Helvering v. Nat. Grocery Co., 304 U.S. 282, 294, 58 S.Ct. 932, 82 L.Ed. 1346; and Ball v. Warrington, 3 Cir., 108 F. 472, 475. In the case last cited this court said, "* * * the general rule of law being that fraud is a question of fact, and when facts are disputed the jury shall decide."

The closing agreement has not been introduced in evidence. It is simply referred to in paragraph (f) of the petition. Attached to the petition as Exhibit A is the assessment of deficiency against the petitioner and his wife under which the suit at bar is brought. In this appears an item, designated (a), which reads as follows, "Other income not reported from the operation of the P. F. McGowan Brewery of Edwardsville, Pa. ($) 890,-000." The deficiency assessment of $9,-758.42 (sic) made in 1927 also appears specifically. The appellant contends that because of the items quoted the burden of proof is upon the Commissioner to show that the closing statement did not cover the income received by the petitioner from the illegal operation of the brewery upon which the assessment is based and that if the 1927 assessment did include and the closing agreement cover any of the petitioner's income from the illegal operation of the brewery, the Commissioner has failed to sustain the burden of showing the fraud or misrepresentation by which the closing agreement may be set aside.

This position is untenable for two reasons. First, it does not appear from evidence of record in the case at bar that the tax deficiency assessed against the petitioner in November, 1927, included any income from the illegal operation of the brewery. Second, even if such assessment was shown to have included income acquired by the petitioner from the illegal operation of the brewery, there is no evidence showing that the whole or any substantial part of the income of the peti-

tioner from his illegal operations was included in the assessment or covered by the closing agreement. Seemingly the petitioner takes the position that if he disclosed any portion of his illegal income to the United States in 1927 or if he was assessed by the United States upon any portion of that illegal income in that year, he may claim the protection of the closing agreement. The success of such a contention would place a great premium upon fraud. It became the petitioner's duty to disclose his true income in 1926 when he. filed his 1925 return. The duty then placed upon him remained his thereafter and required him to disclose his true income when the assessment was made and the closing agreement executed. That he did make such a disclosure or that the United States had knowledge of his true income is clearly rebutted by the evidence, which shows that the petitioner at all times refused to acknowledge his part in the illegal operation of the brewery and that the United States received knowledge of the petitioner's connection with the brewery when McGowan turned informer. For these reasons, it is my opinion that fraud and misrepresentation by the petitioner at the time of the execution of the closing agreement in respect to his true income are clearly shown.

Whatever may be my views upon this question or those of the majority of the court, this question was for the determination of the Board of Tax Appeals which, upon ample and sufficient evidence has resolved it against the petitioner. The Circuit Courts of the United States have held unanimously that when supported by substantial evidence, findings of the Board upon questions of fact are not reviewable. Mitchell v. Commissioner, 2 Cir., 89 F.2d 873, 874, 875, reversed on other grounds, 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917; Wickham v. Commissioner, 8 Cir., 65 F.2d 527, 529, 532; Commissioner v. Hales, 7 Cir., 76 F.2d 916.

As I read the majority opinion of the court it is admitted that the evidence in the case at bar permitted the drawing of an inference by the Board that knowledge of income taxable to the petitioner was. fraudulently withheld by him from the Government at the time of the execution of the closing agreement. In this connection the majority opinion states, "The very most that can be said for the testimony produced before the Board of Tax

Appeals is that it permits two inferences to be drawn; one, that income was fraudulently omitted from the deficiency assessment on which the closing agreement was based; secondly, that the income was considered at the time of the deficiency assessment and led to the figure of $53,990.-46, additional taxable income on which an additional tax of over $9,000 was paid and closing agreement signed, executed and approved by the Secretary of the Treasury." At the very least, the foregoing is a statement by this court of a permissible inference to be drawn by the Board of Tax Appeals upon the evidence that the petitioner neglected fraudulently to disclose all his income when the closing agreement was executed. The Board found the fraud of the petitioner to be a fact.

Accordingly I am of the opinion that the decision of the Board of Tax Appeals should be affirmed and for this reason I must dissent from the majority opinion of this court.