## RUNKLE *v.* BURNHAM.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF NEW JERSEY.

No. 266. Argued March 12, 13, 1894. —Decided April 30, 1894.

A contract for a loan and water works in Havana having been awarded to R., G., L. and M., a deposit was required as a guarantee. N. was employed by R. to raise the money. He borrowed it from B. R. became the assignee of the interests of his co-contractors, and then failed to perform the contract. In order to procure a general release from the liabilities arising from such failure, he gave a power of attorney to Q., who thereupon, in his name and as attorney in fact, entered into an agreement in writing with B. by which it was, among other things, agreed that R. should pay to B. an agreed balance of $19,087.36 in three months from date, with interest at 9 per cent. That sum not being paid when due, B. sued R. to recover it. *Held,*

    (1) That the power granted by R. to Q. was outstanding when the agreement was executed;

    (2) That the agreement made by Q. with B. was authorized by the power;

(3) That R., having taken an assignment of the respective interests of his co-contractors, stood in their shoes, and that evidence touching the transaction, admissible against an assigning co-contractor, was admissible against him.

The rejection of evidence immaterial to the result did not constitute reversible error.

A witness may be asked as to the relations of the parties at the time of the execution of a written power of attorney, although his answers may have a bearing upon their obligations arising under a written contract made under the power.

Findings of fact made by the court below are binding here when there is any evidence to support them.

A defendant who, after denial of his motion for a nonsuit made at the close of plaintiff's evidence in chief, offers evidence in his own behalf, thereby waives his motion and an exception to the denial of it.

THE defendant here, who was plaintiff below, brought an action of assumpsit against Daniel Runkle to recover the sum of $19,087.36, with interest at the rate of nine per cent from the 4th of August, 1884, to the time of entering suit.

After issue joined the case was by stipulation submitted to the court without the intervention of a jury.

The contract in issue purported to have been "subscribed" by one Mestre as "attorney in fact of the defendant."

At the close of the plaintiff's case, the defendant moved for judgment in his favor, which motion was overruled, and this action of the court was excepted to. Defendant did not thereupon rest, but proceeded to offer evidence on his own behalf. After both parties had concluded, the defendant requested the court to find: 1st, that it does not appear that Mestre had any authority to assume an obligation in the name of the defendant; and, 2d, that the contract of August 4, 1884, does not place any liability on the defendant. These requests were refused, and the defendant duly excepted to their refusal. The court then proceeded to find the facts as follows:

"First. That on the eighteenth day of March, eighteen hundred and eighty-two, contracts for a loan and water works were awarded by the city of Havana to David Runkle, the defendant, Walter H. Gilson, Joseph H. Lyles, and Maddison & Co., of London, and on the 27th of the same March, Lino Martinez deposited the sum of $64,000 in Spanish gold in the

municipal treasury of Havana as a guarantee for the proposition which Messrs. Gilson, Runkle, Lyles, and Maddison & Co., of London, had presented to the municipality of Havana for the loan of $5,600,000.

"Second. That Martinez had been employed by Runkle, who was acting for himself and his co-contractors, to raise the amount required to be deposited as a guarantee for the fulfilment of a contract, and in pursuance of this employment Martinez had borrowed the sum of $64,000 from the plaintiff Burnham.

"Third. Runkle, Gilson, and Lyles undertook to repay this sum of $64,000 to Martinez at any time he should ask for the same, if it should be demanded by the city in consequence of their not having carried out the contract for the water works, or for any cause for which the city might retain the deposit, and as a remuneration and for the payment of interest to Martinez they assigned to him the amount of $25,000, payable monthly, at the rate of one and $\frac{137}{1000}$ per cent from the amounts they should receive for the works. This undertaking fell through in consequence of the final abandonment of the contract, but the fact remains that it was the understanding of all the parties that Martinez was to be repaid the sum of $64,000, with interest, and also to be remunerated for his services or expenses.

"Fourth. Subsequently to these proceedings Runkle became the assignee of all the rights and interests of his co-contractors under their contract with the city of Havana, and thenceforward was solely entitled to all the profits that might accrue from its performance and liable for the consequences of its non-performance.

"Fifth. Runkle failed to perform the contract for the water works, and by reason of his default the sum deposited with the city of Havana as a guarantee was forfeited, and he became liable for such damages as were sustained by the city on account of his failure. He also became responsible to Martinez for the repayment of the guarantee deposited, with interest, and expenses incurred in effecting the loan from Burnham, amounting in all to the sum of $83,087.36, as per

account stated between Burnham and Martinez on the 4th of August, 1884.

"Sixth. Runkle, being desirous of procuring a full and general release from all liability on account of his connection with the contract for the loan and water works, executed in due form on the 25th of June, 1884, a letter of attorney to José M. Mestre, who was in the city of Havana, authorizing him 'to demand, collect, and receive such sum or sums of money and property of any kind' belonging to Runkle, 'under or in connection with the contracts for the loan and water works, made in consequence of the public bid therefor on the 18th of March, 1882, and which loan and contract were awarded to me (him) together with Walter H. Gilson and Maddison & Co., and also Joseph H. Lyles,' . . . 'and to do all things necessary in the judgment of my said attorney and to obtain my release from all liability as one of the contractors in connection with the said loan and water works, giving and granting unto my said attorney full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises as fully to all intents and purposes as I might or could do if personally present,' etc.

"Seventh. By virtue of the authority conferred on him by the aforesaid power of attorney, Mestre, on the fourth day of August, 1884, acting for and in the name of Runkle, entered into a written agreement of stipulation in the Spanish language with Burnham, of which the following is a translation:

"'This present is to certify, to which I desire to give all the force of a public instrument, that I, Mr. S. J. Burnham, having received from Mr. Lino Martinez the sum of sixty-four thousand dollars, gold, on account of the sum of $83,087.36, which results in my favor from the account that under this date has been presented to Mr. Lino Martinez in relation to the drafts drawn on the 24th of March, 1882, by Mr. H. J. Overman upon Mr. E. C. Maddison, of London, and endorsed to my order by the said Mr. Lino Martinez, the which were protested for non-payment and protected in due course by Messrs. Baring

Brothers and Company, of London, as the representatives of the Messrs. J. C. Burnham and Company, have agreed in regard to the balance of $19,087.36 that still remains unpaid as follows:

"'Recognizing, as I recognize, Mr. Daniel Runkle as the assignee of Mr. Walter Gilson, who in his turn was the assignee of Mr. E. C. Maddison, for himself and for the firm of Maddison and Company, I bind myself to place at the disposal of said Mr. Runkle the shares of the Charnwood Forest Railway Company, of the nominal value of fourteen thousand pounds sterling, which the aforesaid Messrs. Maddison & Company deposited in my hands and transferred to me as guarantee for the reimbursement of the amount of the aforesaid drafts and the expenses and interest relating thereto so soon as such balance of $19,087.36 shall be satisfied by the aforesaid Mr. Runkle, which it is to be done within the period of three months counting from the date hereof, it being left to his discretion either to do so directly or to direct that if the said shares deposited there be sold (in accordance with such instructions that for such purpose he may give) such portion as may be necessary for the reimbursement of such balance of $19,087.36, which being covered, the remaining shares shall remain all at the free disposal of Mr. Runkle, as well as any balance in cash that may arise on the partial sale of such shares.

"'The sum owing shall carry interest at nine per cent per annum until its complete payment.

"'Mr. José Manuel Mestre, as the attorney-in-fact of Mr. Runkle, subscribes this present stipulation by way of assent in the name of his principal.

"'That in order that it may have all its due effect this is done and signed in triplicate of the same tenor, one for each party, at Havana, the 4th of August, 1884.

*"' Memorandum as to Corrections.*

"'NOTA.— At the moment of signing Mr. S. J. Burnham stated that he assigns and transfers to Mr. Candido Zabarte y Paris all the rights and rights of action that belong to him

under the foregoing instrument, subrogating him in his place and stead by reason of having received from him the aforesaid balance of $19,087.36, but on the understanding that said Burnham remains always bounden to sell the shares of stock in question to the order of Mr. Runkle, as set forth, and to deliver to the latter the balance of the proceeds of the sale and the shares remaining.   Dated as above.

"'(Signed)                         JOSÉ MAN'L MESTRE.
                                  "' L. MARTINEZ.
                                  "' S. J. BURNHAM.
                                  "' CANDO ZABARTE PARIS.

"' As witnesses :
   "' E. COSCALLUCLA.
   "' ANTONIO PAIS.'

"Eighth.  Runkle had no property or debts belonging to him in the city of Havana, and the letter of attorney was executed for the sole purpose of authorizing Mestre to procure his release from any and all liability as a contractor in connection with the water works, and there is no proof that Mestre received notice of the revocation of the letter before he signed the agreement with Burnham.

"Ninth.  Martinez exerted himself to obtain from the authorities of Havana the release of Runkle and the return of the deposit money in consideration of Runkle entering into the agreement with Burnham.

"Tenth.  The right of action accruing to Burnham under the agreement was assigned by him to Candido Zabarte y Paris, and by the latter to Francisco G. Mediavilla."

From the facts thus found the court then drew the following legal conclusions :

That the agreement of August 4, 1884, was assented to by Runkle through Mestre, who had full power under the letter of attorney to bind his principal.  The consideration of the agreement on the part of Runkle was his release from all liability under his contract with the city of Havana, and the return of the deposit money, both of which purposes were accomplished through the instrumentality of Martinez.

Judgment was entered for the plaintiff for $19,087.36 with interest at the rate of nine per cent from August 4, 1884, to date of entry thereof.

Defendant excepted to the findings of fact and to the conclusions of law deduced therefrom, and brought the case, by error, here.

*Mr. Hamilton Wallis* and *Mr. William D. Edwards* for plaintiff in error.

*Mr. Frederic R. Coudert,* (with whom were *Mr. Robert O. Babbitt* and *Mr. Charles Frederic Adams* on the brief,) for defendant in error.

MR. JUSTICE WHITE, after stating the case, delivered the opinion of the court.

1. By not resting on his motion for a non-suit, and by thereafter offering his own evidence, the defendant waived his motion, and the overruling thereof cannot be assigned for error here. *Union Pacific Railway* v. *Daniels,* 152 U. S. 684, and authorities there cited.

2. The exceptions taken during the progress of the trial are numerous. We will content ourselves with examining the merits of those which have been specifically assigned as error.

The plaintiff offered in evidence an account, growing out of the purchase and protest of the draft, and kept between Martinez and Burnham, which was objected to, on the ground that it was *res inter alios.*

Runkle, Gilson, Lyles, and Maddison & Co. were parties to the water works contract. In order to furnish the $64,000, which was to be deposited with the city of Havana, Martinez bought a draft drawn by an agent of Maddison & Co. on that firm in London. This draft, on being endorsed and guaranteed by Martinez, was discounted by Burnham, who forwarded it to London for collection. There it was protested for non-payment. The result was that Burnham held Martinez and Maddison & Co. on the draft, which was taken *supra* protest, by Baring Brothers, at the request of Burnham. Maddison &

Co. thereupon deposited with Burnham, as collateral to secure their obligation on the draft, certain shares of the "Charnwood Forest Railroad Company." Inasmuch as Runkle appears, both in the contract sued upon and in the power of attorney upon which the contract is predicated, as the assignee of Maddison & Co., and as standing in their place and stead, we think it clear that the account was not *res inter alios* as to him. He represented Maddison & Co., and held their rights, and, therefore, the account was as much admissible against him as it would have been against the firm.

3. For the purpose of showing that the power of attorney, under which Mestre acted as the agent of Runkle, had been revoked, the defendant offered a series of telegrams addressed to Olcott, the attorney-at-law of Runkle in New York, which read as follows:

"HAVANA, *July* 23, 1884.
"To Olcott, 35 Broadway, N. Y.:

"Telegraph if power is coming to-morrow steamer.

"MESTRE.
"MARTINEZ."

"HAVANA, *July* 18, 1884.
"To Olcott, 35 Broadway, N. Y.:

"The powers received are insufficient. It is urgent to send by to-morrow's steamer new Spanish power, in Spanish, from Runkle, Lyles, Gilson, and Maddison & Co., to Martinez, Mestre, confirming the power of March 6th and June 26th, amplifying them specially, to cancel the contract to loan, to accept return of deposit, giving common council liberty of action, and to execute a general release; all well explained.

"MESTRE.
"MARTINEZ."

"HAVANA, *July* 22, 1884.
"To Olcott, 35 Broadway, N. Y.:

"Send, anyhow, first steamer, power according telegram eighteenth.                    "MESTRE.
"MARTINEZ."

"To Runkle, Lyles, Gilson, care Olcott, 35 Broadway, N. Y.:

"I urge forward pending powers. I protest against damage delay.

"MARTINEZ."

These telegrams were rejected on the ground that they had not been properly proved. Whether their rejection was warranted is unnecessary to be considered. The telegrams called for a confirmation of the existing power, and not for its revocation. If they had been admitted, they could not have affected the question of the revocation of the power. Their rejection being immaterial to the result, no reversal for error in this particular can be had. *Cavazos* v. *Trevino*, 6 Wall. 773; *Railroad Co.* v. *Pratt*, 22 Wall. 123; *Home Insurance Co.* v. *Baltimore Warehouse Co.*, 93 U. S. 527; *Mining Co.* v. *Taylor*, 100 U. S. 37.

4. Martinez was asked whether, pending the negotiations in Havana for the settlement of the transactions out of which the present contract grew, he had exacted from Mestre, agent of the defendant, any agreement as to the debt due to Burnham, as a part of the final adjustment. This question was objected to, on the ground that it was an attempt to show the assumption by parol of an obligation, when such obligation, if it existed, must result from the written contract. We think the objection was untenable. The question was asked the witness not for the purpose of proving a liability on the written contract, but in order to show the relations existing between the parties at the time the authority given by the power of attorney was acted on. The obligation of course must result from the text of the written contract, or by necessary implication therefrom. Testimony, however, was admissible to show th condition of affairs at the time the agent acted, not in order to vary or change the written contract, but to throw light upon the situation. *Le Roy* v. *Beard*, 8 How. 451.

5. The numerous other exceptions to the admissibility of evidence found in the record are, we think, not well taken. We have considered them all. The requests for findings made by the defendant upon the whole case, as we have seen, were

as follows: " 1st, that it does not appear that Mestre had any authority to assume an obligation on the part of the defendant ; 2d, that the contract of August 4, 1884, does not impose any liability upon the defendant." These requests involved both questions of law and fact, and were refused, and exceptions were reserved to their refusal. The findings of fact made by the court below are binding here, if there be any evidence to support them. *St. Louis* v. *Rutz*, 138 U. S. 226.

It is contended that there is no evidence to show that the power of attorney, which is relied on, was an existing power at the time the contract was signed by Mestre as Runkle's agent. This position is not supported by the record. True, there is evidence tending to show that Mestre, the agent of Runkle in Havana, requested enlarged powers from Runkle, and there is also evidence tending to show the arrival at Havana, on the day on which the contract was made, of an instrument conferring the enlarged powers which Mestre deemed desirable to justify him in dealing with the city of Havana. There is, however, no evidence that the second power, if received, revoked the power which is in evidence. As to the letter which Runkle wrote to Mestre, and which, it is contended, was a revocation of the power, its contents imply the very reverse. There was certainly no reason why Runkle should have said to Mestre that he " would like " a particular provision as to the Maddison & Co. liability inserted in the contract, unless the agent had authority to deal with reference to this matter. Indeed, although Runkle and Olcott, his attorney, were both examined, and although they both referred to the alleged new power of attorney, their testimony seems sedulously to avoid any statement that the new power revoked the power of June 25. If the new power of attorney was sent, and revoked the one relied on here, Runkle or his attorney could have dispelled all doubt by offering it in evidence, or by testifying as to its contents. Their silence must necessarily make against them on the question of revocation. Mansfield, J., in *Holdane* v. *Harney*, 4 Burr. 2484, 2487. The doctrine that the production of weaker evidence, when stronger might have been produced, lays the producer open to the sus-

picion that the stronger evidence would have been to his prejudice was expressly adopted in the case of *Clifton* v. *United States*, 4 How. 242.

This leaves only for consideration the question of whether the power authorized the contract with Burnham and whether that contract bound Runkle for the debt sued on. It will be observed that the power of attorney expressly designates Runkle as the assignee of Lyles and Gilson and the "transferee" of Maddison and Co., and then authorizes the agent "for me, and in my name, place, and stead, to ask, demand, collect, and receive such sum or sums of money and property of all or any kinds to which in any capacity aforesaid I have, or may have, the right or claim or demand, under or in connection with the contracts for the loan and water works in the Island of Cuba, made in consequence of the public bidding therefor in the city of Havana, in the Island of Cuba, on the 18th day of March, 1882, . . . to compound and compromise all such claims as I may have aforesaid, . . . and to obtain my release from all liability as one of the contractors in connection with the said loan and water works." The contention is that this power, while it authorized the agent to enforce any demands which Runkle may have had, did not authorize him to assume an obligation on behalf of Runkle. The finding below is that, at the time the power was exercised, it was necessary that the agent, in order to obtain his principal's discharge by the city of Havana, should settle the Martinez-Burnham liability.

In addition to these findings, the face of the power of attorney indicates the necessity of the agent's action in order to carry out the purposes of the power. The power itself states that Runkle is the assignee or "transferee" of all those who had been parties with him to the water works contract. It represents him as the "transferee" of Maddison & Co., and as entitled to all of Maddison & Co's rights. We have seen that Maddison & Co. were bound, with Martinez, to Burnham on the draft which Burnham had discounted and which was protested, and that the stock of Maddison and Co. was pledged to secure payment of the draft. A settlement of Runkle's

relations, as the assignee of Maddison & Co., necessarily included an adjustment of the debt of Burnham under the very terms of the power of attorney. This power was evidently executed not alone for the purpose of adjusting the water works contract with the city of Havana, but also with the object of arranging the debt due to Burnham, back of which was the stock which had been pledged by Maddison & Co., and which belonged to Runkle as their assignee.

We now come to the consideration of the contract itself, which, it is contended, did not justify the conclusion that Runkle had assumed the indebtedness to Burnham. The contract recites the drawing of the draft upon Maddison & Co., the indorsement by Martinez, and the protest. It credits the receipt from the city of Havana of the $64,000, which had been deposited on account of the loan and water works contract, and states a balance due on the draft to Burnham. In stating the balance thus due, it "recognizes" Runkle as the assignee, binds Burnham to place the Charnwood Forest Railroad stock at the disposal of Runkle upon the payment of the debt, and binds him also, in the event of the sale of the stock, and the application of the proceeds thereof, to the debt, to pay over to Runkle any balance that might remain. It is insisted that this contract does not make Runkle ultimately liable for any deficiency, and that, therefore, the contract imports no debt on his part. This claim necessarily contradicts the finding of the court below, which is that Runkle had assumed responsibility for the balance, and it also contradicts the contract itself. The stock was not primarily Runkle's, but Maddison & Co.'s. Any dealing with Runkle, and by Runkle, as owner of the stock, and as assignee of Maddison & Co., imported that Runkle had succeeded to the claims of Maddison & Co. and, by fair inference, to all their obligations with reference to this part of the transaction. Indeed, the careful manner in which the contract states the drawing of the draft, its protest, and the transfer by Maddison & Co. to Runkle, seems to have been intended to emphasize the fact that Runkle, in acquiring the rights of Maddison & Co., had put himself in their place and stead. That Runkle was the

general assignee of Maddison & Co., and considered himself as not only entitled to their rights, but also as the representative of their obligations in connection with the loan and water works contract, results from the terms of the power of attorney, in which he authorizes the agent not only to acquire Maddison & Co.'s rights, but to stipulate for the discharge of their obligation. In other words, the contract, read in connection with the terms of the power of attorney, leaves no doubt that Runkle was dealing and treating in the capacity of a person who was not only entitled to the rights, but was also subject to the liabilities of all the original parties to the loan and water works contract. This view is strengthened by the fact that, although Runkle testified on the trial, the assignment from Maddison & Co. to him was not offered in evidence, nor even referred to. The failure to produce it, or to testify in reference to it, when its contents were peculiarly within the knowledge of Runkle, justifies the presumption that its provisions would have been unfavorable to Runkle's position.

*Judgment affirmed.*