### THE BOLTON CASTLE.

### WYLDE v. COWIN.

#### (Circuit Court of Appeals, First Circuit. April 26, 1918.)

#### No. 1322.

1. SHIPPING ⊜⇒84(2)—UNLOADING—DANGERS—CARE.
    Where a vessel furnished a hoisting tackle and gear for use in unloading cargo, it owes longshoremen, engaged in unloading the vessel, care commensurate with the danger from the breaking of gear.

2. EVIDENCE ⊜⇒75—PRESUMPTIONS.
    The unexplained failure to produce evidence which is in the possession of a party raises a presumption that, if produced, it would not be favorable to the contention of the party possessing it.

3. SHIPPING ⊜⇒86(2)—INJURIES TO LONGSHOREMAN—NEGLIGENCE.
    On a libel against a vessel for injuries to a longshoreman, resulting from the breaking of hoisting gear, evidence held to warrant a finding of

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

negligence on the part of the vessel in failing to discover the defect in a pin holding a block.

Appeal from the District Court of the United States for the District of Massachusetts; Jas. M. Morton, Judge.

Libel by James P. Cowin against the steamship Bolton Castle, claimed by John Wylde. From a decree for libelant, claimant appeals. Affirmed.

John M. Woolsey, of New York City (Edward E. Blodgett and Albert T. Gould, both of Boston, Mass., Mark W. MaClay, Jr., and Kirlin, Woolsey & Hickox, all of New York City, and Blodgett, Jones, Burnham & Bingham, of Boston, Mass., on the brief), for appellant.

Julian C. Woodman, of Boston, Mass., for appellee.

Before DODGE, BINGHAM, and JOHNSON, Circuit Judges.

JOHNSON, Circuit Judge. This is an appeal from the final decree of the District Court of Massachusetts that the appellee, who was libelant in the court below, recover damages for personal injuries received by him October 18, 1916, while at work as a longshoreman, in unloading cargo at Boston from the steamship Bolton Castle.

The libelant received his injuries by reason of the breaking of a swivel pin in a block at the foot of the port derrick, on the forward side of the foremast. This derrick was a part of the hoisting apparatus of the vessel, and at the time of the accident was being used to carry loads from the deck to the wharf. The heel of the derrick was attached to the foremast upon its port side, about 6 feet above the level of the deck, and connected with it where it joined the mast was a steel block through which a wire rope ran to a winch located about 4 feet in front of the mainmast. This block weighed about 75 pounds. It had a swivel at one end consisting of a U-shaped steel forging with a shank fashioned into a pin about 1¼ inches in diameter. This pin passed through a hole in a metal strap that extended across the head of the block, and was clinched on the inside of the strap, so that it formed a part of the block. This U-shaped forging was so connected to a cast steel receptacle riveted to the mast that the block was free to move vertically, and also to revolve around the pin of the swivel and follow the direction of the wire rope that passed through it. It is evident that the strain upon the block fell almost entirely upon the head of the pin inside the strap, and that the pull upon it was designed to be straight. To accomplish this the block had been provided with a universal joint by means of its attachment to the mast, and the swivel.

The block, after its manufacture and before its use, had been tested for an 8-ton strain; but the load which was being carried by the derrick to which it was attached at the time of the accident was estimated at only 900 or 1,000 pounds.

The Bolton Castle was built in 1914, and then equipped with hoisting tackle and gear for loading and unloading cargo, of which the block in question was a part. It is not in dispute that the block was made by a reputable manufacturer, and proper and suitable for the purpose

for which it was designed, and that it had not been used for discharging more than eight cargoes before the accident. The vessel was badly damaged by a fire on the pier at which she was lying in New York, in February, 1916, and the steel plates upon her sides and decks were warped. The fire reached the bridge deck and involved that part of the mast where this block was attached. The extent of the damage was shown by the fact that the cost of repairs upon the vessel was about $160,000. After the fire, the whole of the tackle and gear connected with the ship, including that used in loading and unloading cargo, was overhauled and inspected. The vessel arrived at Boston October 17, 1916, and the libelant went to work upon that day, in a longshoremen's crew, discharging her cargo. He worked all of that day and on the morning of the next day from 6 o'clock to 9:30 o'clock, when the accident occurred. It was his duty to turn on the steam and operate the winch connected with the port boom, which took the load from the deck and carried it over the side of the vessel to the dock. He stood facing the forward hatch, with his back toward the mast, at the time of the accident. The fall connected with the derrick had been hooked to a load on the deck, and he had turned the steam onto the winch and raised the load about a foot from the deck, and the boom had carried it nearly to the rail of the vessel, when the swivel pin broke within about one quarter of an inch from the U-shaped forging, and the block was pulled upon the libelant with a momentum, due to its weight and the strain upon it.

[1] The hoisting tackle and gear were furnished by the vessel. The pin was defective and unsafe, and the vessel is liable for the libelant's injuries if its defective condition could have been discovered by the exercise of reasonable care before the accident. It was evident that there was a great strain upon this pin when a load was being carried by the derrick, and that, if it broke, the heavy steel block would fly off with great force and endanger the safety of the workmen who were near it. Care commensurate with this danger was required in the inspection of the block, and the fact that it was on the steamship at the time of the fire increased the necessity for careful inspection.

[2, 3] The swivel, with that part of the broken pin which was attached to it, was preserved by the chief officer of the vessel; but the remaining part of the pin, with the head upon it, was picked up by one of the fellow workmen of the libelant, and preserved. Both of these parts were offered in evidence. They disclose at the point of fracture three breaks, which obviously occurred at different times. The new break was easily distinguishable from the older ones, which involved a large part of the cross-section of the pin; one being about one-quarter of an inch, and the other about one-half of an inch in depth, and both bearing unmistakable evidence of having been made some time before the last break, which completely severed the pin.

The block with the metal strap upon it, through which the pin passed, and upon the inside of which it was headed down, was not in evidence. If it had been, it could have been easily determined whether the old cracks in the pin could have been seen before the accident. It appears from the testimony that after the accident the chief officer substituted

a new block for the old one, that he retained the U-shaped forging, and turned it over to the agents of the vessel; but the evidence does not disclose what disposition was made of the old block. The only direct testimony in regard to the width of the strap was that given by James McNaught, a consulting engineer, who was a witness for the claimant. He testified that the width of the strap was about 2¼ inches and that there was not more than one-eighth of an inch play between the head of the pin and the strap, and that if it had been more he would have discarded the block when he inspected it after the fire; but, as the length of the pin from the inside of the strap to the metal forging was about 1¾ inches in length, the strap could not have been of this width. Witnesses for the libelant, however, testified that from the amount of wear shown on the different parts of the pin there was slack enough between the strap and the head of the pin, so that the crack could have been easily discovered.

We are unable to determine the width of the strap from the lines of wear upon the pin, and are in doubt whether the old breaks could have been seen or not. The block with the strap, through which the pin passed, was in the possession of the vessel after the accident; it was not produced at the trial, and no explanation was given of the failure to produce it. The failure, unexplained, to produce evidence which is in the possession of a party, raises a presumption that, if produced, it would not be favorable to the contention of the party possessing it. Kirby v. Tallmage, 160 U. S. 379, 16 Sup. Ct. 349, 40 L. Ed. 463; Graves v. United States, 150 U. S. 120, 14 Sup. Ct. 40, 37 L. Ed. 1021; Runkle v. Burnham, 153 U. S. 216, 225, 14 Sup. Ct. 837, 38 L. Ed. 694. We do not, however, rely upon this presumption in reaching our conclusion because an inspection of the pin discloses that there was unequal wearing on the inside of the head next to the strap, and also upon the sides of the pin, and we are convinced, as was the learned District Judge, that "originally the pin bore almost wholly on one side, as the wear shows; and the load was for a long time carried on that side of the pin, and the other side did very little work." This unequal wearing clearly proves that the pin must have been bent, by reason of the strain upon it not being in the direct line of its axis, as originally designed, but at an angle with it, caused by the uneven surface of its head.

We are satisfied that the crookedness of the pin, the uneven wearing upon its head, and its failure to work freely as a swivel could be plainly seen, and that they should have caused the vessel, in the exercise of the degree of care required of it under the circumstances, to have made such an examination as would have disclosed the old cracks in it, and that it therefore was chargeable with notice of them and the defective condition of the block, and solely liable for the injuries received by the libelant.

The decree of the District Court is affirmed, with interest, and the appellee recovers his costs of appeal.