H. P. LAMBERT CO. ET AL. *v.* UNITED STATES

No. 4871.—Invoices dated Tokyo, Japan, June 7, 1938, etc.
   Certified June 9, 1938, etc.
   Entered at Boston, Mass., July 9, 1938, etc.
   Entry No. 290, etc.

(Decided April 13, 1940)

*Jerome G. Clifford* (*John F. Kavanagh* of counsel) for the plaintiffs.
*Webster J. Oliver*, Assistant Attorney General (*Richard E. FitzGibbon*, special attorney), for the defendant.

TILSON, Judge: The appeals to rappraisement listed in schedule A hereto attached and made a part hereof, involve the proper dutiable

values of canned tuna fish imported from Japan, and entered at the port of Boston between June 1, 1937, and July 9, 1938.

At the trial of these cases at Boston on May 18, 1939, counsel for the respective parties agreed as follows:

Mr. KAVANAGH. * * * I believe Mr. FitzGibbon will agree to Mr. Hoshimoto's testimony taken at Providence in Reap. No. 120340–A, etc., being made a part of the record here.

Mr. FITZGIBBON. No objection.

Judge TILSON. So ordered.

The testimony of Mr. Hoshimoto taken at Providence was directed primarily to establishing the proper dutiable values of the tuna fish. Other evidence was offered by the appellant at Boston with a view to establishing that there had not been a legal and proper designation and examination of the merchandise for appraisement purposes, and upon which it is contended the appraisements are null and void.

However, in view of the recent ruling of our appellate court in the case of *United States* v. *Young*, C. A. D. 73, there can be no question but that the special regulations under which this merchandise was designated and examined were valid. From the evidence before me on this point I am satisfied that such designations and examinations as were made in this case were sufficient compliance with section 499 of the Tariff Act of 1930, and the special regulations, reported as T. D. 48807 and T. D. 49412, as to authorize me to hold that the appraisements based thereon were not null and void.

In none of the cases before me did the appraiser give the slightest indication that the market in Japan in which this merchandise was purchased was not the principal market for such or similar merchandise. Neither is there any indication by the appraiser that the quantities in which the merchandise in each reappraisement in this case was purchased, shipped, and imported into the United States were not usual wholesale quantities sold in the ordinary course of trade. The only thing the appraiser found in any of the cases before me to which the importers do not subscribe was that the invoiced prices were not the prices at which such or similar merchandise was freely offered for sale in the principal markets of Japan in usual wholesale quantities and in the ordinary course of trade.

The concluding sentence of the first paragraph of section 501 of the Tariff Act of 1930, reads as follows:

The value found by the appraiser shall be presumed to be the value of the merchandise and the burden shall rest upon the party who challenges its correctness to prove otherwise.

The importers make no contention in this case that the quantities in which the merchandise was invoiced are not usual wholesale quantities, as found by the appraiser. The importers make no contention that the market in which this merchandise was purchased was not the principal market in the country of exportation for such or similar

merchandise, as found by the appraiser. The importers make no contention that the export values are not the proper basis of appraisement, as found by the appraiser. The importers make no contention that the sale of the involved merchandise was not in the ordinary course of trade, as found by the appraiser. The only contention the importers make in this case is that the appraised values are higher than the price at which such or similar merchandise was freely offered for sale to all purchasers in the principal markets of Japan in the usual wholesale quantities and in the ordinary course of trade for exportation to the United States.

There is no evidence before me to overcome the presumptively correct finding of the appraiser that the quantities in which this merchandise was invoiced are the usual wholesale quantities. There is no evidence before me to overcome the presumptively correct finding of the appraiser that the market in which the merchandise was purchased was the principal market in the country of exportation for such or similar merchandise. There is no evidence before me to overcome the presumptively correct finding of the appraiser that export value is the correct basis of appraisement. Neither is there any evidence before me to overcome the presumptively correct finding of the appraiser that the sale of the involved merchandise was in the ordinary course of trade.

In the case of *United States* v. *Downing*, 20 C. C. P. A. 251, T. D. 46057, the appellate court, in discussing the burden that rests upon the appellant in reappraisement cases, stated:

It is sufficient here to bear in mind that the importer having appealed, it was incumbent upon it to show (1) the foreign value and (2) the export value, to the end that the higher might be taken as the dutiable value, or to show (1) a foreign value and the non-existence of an export value, or (2) an export value and the non-existence of a foreign value. Being the appealing party it was incumbent upon it "to meet every material issue involved in the case." *Meadows, Wye & Co. (Inc.) et al.* v. *United States*, 17 C. C. P. A. (Customs) 36, 42, T. D. 43324.

In this case it might be assumed and argued that the importer had not shown (1) the foreign value and (2) the export value, to the end that the higher might be taken as the dutiable value, or (1) a foreign value and the nonexistence of an export value, or (2) an export value and the nonexistence of a foreign value, and that therefore it had not met every material issue in the case.

In the light of the above authority, with which I am in accord, there can be no doubt that the appellant in a reappraisement case is required to meet every material issue in the case, but in the instant case there is no issue, material or otherwise, concerning the foreign and export value for the reason that there is a presumptively correct finding of export value by the appraiser as the proper basis of appraisement, and there is no evidence before me sufficient to overcome such a finding by the appraiser. So long as the appellant does not question the

presumptively correct finding of export value by the appraiser as the proper basis of appraisement, and so long as there is no evidence in the record to overcome such presumptively correct finding, there can be no issue, material or otherwise, on this point. The same is true with reference to the principal market, the usual wholesale quantity and the ordinary course of trade.

In the case of *United States* v. *Lilly*, 14 Ct. Cust. Appls. 332, T. D. 41970, in determining the factors which enter into the classification of merchandise by the collector, the appellate court said:

> The collector, having classified the goods under paragraph 217, when the matter came to the attention of the court below, the presumption was that he had found all the necessary facts to exist which brought the goods within that classification, and that his classification was.correct.

I therefore hold that when this matter came to my attention the presumption was that the appraiser had found all the facts to exist which were necessary to support his appraisement, including a finding that the export value was the proper basis of appraisement, that the market in which this merchandise was sold was the principal market in Japan in which such or similar merchandise was sold, or freely offered for sale in the ordinary course of trade, and that the quantities shown on the invoices were the usual wholesale quantities.

In view of the foregoing I must determine whether or not the presumptively correct dutiable value found by the appraiser has been overcome by the evidence offered. At the trial of the case the vice president of the importing corporation testified that he had been with this same corporation for 9½ years; that he was in charge of sales and buying; that in the year 1938 his firm handled 45,000 cases of tuna fish; and that he had been to Japan many times, the last time being in 1935, and that he placed the order for this merchandise by cable. On the question of the value of the merchandise he testified as follows:

> Q. Do the prices on these invoices here represent the prices you paid for this merchandise?—A. Yes, sir.
>
> Q. You testified that the price paid for this merchandise was the price shown on the invoices?—A. Yes, sir.
>
> Q. You paid exactly what appears on these invoices?—A. Yes, sir.
>
> Q. Could any one in the United States get that quality represented on these invoices by paying that price?—A. Yes, sir.

On the question of the value of this merchandise the above testimony stands uncontradicted, and under the decision in the case of *United States* v. *Glendinning, McLeish*, 12 Ct. Cust. Appls. 222, T. D. 40229, is sufficient to overcome the presumptively correct value found by the appraiser. The following is quoted from the above case:

> This case is submitted to this court upon the following stipulation:
>
> \*   \*   \*   \*   \*   \*   \*
>
> 3. The importers filed appeals to reappraisement which were heard by United States General Appraiser Weller, at which hearing the importer appeared and

testified that he ordered the merchandise by cable, that it was invoiced to him at the prices enumerated upon the invoices, which he accepted, and that he actually paid these prices less the discounts enumerated on the invoice; whereupon the importer rested.

4. Upon the record as thus made, both sides submitted.

\*     \*     \*     \*     \*     \*     \*

It is argued by the Government that the evidence submitted by the importer at the hearing before the general appraiser was not sufficient to overcome the presumption of correctness attending the findings of value of the appraiser and that the findings of value as returned by the general appraiser should have been sustained by the Board of General Appraisers.

\*     \*     \*     \*     \*     \*     \*

It is a well established rule of law that the official acts of the customs officials are presumed to be correct.—*United States* v. *Rappolt & Co.* (9 Ct. Cust. Appls. 21; T. D. 37846).

The jurisdiction of the general appraiser having been invoked by the appeals to reappraisement filed by the importer, it was incumbent upon him to submit in the first instance competent and relevant evidence of a substantial character tending to prove the issuable facts, in order to overcome the presumption of correctness attending the findings of value returned by the appraiser. If he did submit such evidence to the general appraiser, the Government having presented no evidence, the findings of the general appraiser should have been in accordance with the evidence adduced by the importer. If he failed to submit evidence of the character stated, the presumption of correctness attending the findings returned by the appraiser was not overcome and the findings of value returned by the general appraiser should have been sustained by the Board of General Appraisers.

It seems to us that a fair and reasonable construction of the stipulation before us establishes the following facts: The goods were ordered by cable, the order was accepted and the merchandise was shipped in three shipments, October 1, October 8, and November 12, 1922; the facts as stated constituted an order and an acceptance, a purchase and sale, at prices "enumerated upon the invoices."

In the absence of evidence to the contrary it seems to us that we may assume the natural sequence of events in transactions in due course of trade, and that therefore the merchandise was shipped within a reasonable time after the receipt of the order therefor and at prices prevailing in the markets of the country at or near the time of shipment or exportation.

*The importer paid the prices enumerated in the invoices.*

This evidence is substantially more than a mere examination of the invoices and the prices written therein, and the affidavit in connection therewith; it is competent evidence of the entire transaction and of the issuable facts before the general appraiser for consideration, and eliminated from consideration the conjecture, in the absence of any impeaching testimony, many and various questions that may have been under consideration by the appraiser when he performed his duties of appraisement. *In any event it was competent, relevant testimony of a substantial character and of sufficient probative force to overcome the presumption of correctness attending the findings of value returned by the appraiser.* It was not conclusive evidence of the facts. The Government might have offered evidence of a substantial, contradictory character, and findings of value may have been returned by the general appraiser in accordance therewith. The Government offered no evidence. [Italics mine.]

So it might be said in the instant case, the evidence offered by the importer was not conclusive evidence of the facts, but as in the

*Glendinning* case, *supra,* the evidence offered by the importer was, in any event, competent, relevant testimony of a substantial character and of sufficient probative force to overcome the presumption of correctness attending the findings of value returned by the appraiser, thus establishing for the importer a *prima facie* case.

An examination of the decisions of the appellate court, subsequent to the decision in the *Glendinning* case, *supra,* reveals no decision of that court wherein the *Glendinning* decision has been referred to and the pronouncement therein made reversed or modified in any manner. So long as the *Glendinning* decision, *supra,* remains unreversed and unmodified, it must be accepted as the law, and is controlling in any case where the evidence brings the case squarely within the pronouncements therein made.

While the evidence offered by the appellant was not conclusive of the facts, it was, nevertheless, competent, relevant testimony of a substantial character and of sufficient probative force to overcome the presumption of correctness attending the findings of value returned by the appraiser in these cases. The Government might have offered evidence of a substantial, contradictory character, and finding of value might have been returned by this court in accordance therewith, but the Government offered no evidence.

While it is true, as hereinbefore stated, only the testimony of Mr. Hoshimoto, given in reappraisement 120340–A, etc., was admitted in evidence in this case, nevertheless, it is not only the right but the duty of this court to take judicial notice of its own decisions. Referring to my decision in the case of *K. Iguchi* v. *United States,* Reap. Dec. 4698, I find the following:

> During the trial of the case counsel for the Government made the following statement:
>
> The first case is a collector's appeal. The collector's case has a foreign report. Therefore, Mr. Kavanagh is of the opinion if he can break down anything in this report he will win his own cases. Therefore, Mr. Kavanagh is going to try to build his own case on the weakness of the Government's case. Therefore, if we have to proceed the Government will abandon its appeal.

While the Government counsel stated that "The collector's case has a foreign report," in view of the fact that the entries in the instant cases were made just subsequent to the entry in the collector's case, it will hardly be presumed that the special agent's report referred to was limited exclusively to the collector's case and had no bearing upon, application to, or connection with the general market conditions for tuna fish exported from Japan at or about the date of exportation of the tuna fish in the collector's case.

It is clear to me that at the time of the trial of the instant cases the Government had in its possession a special agent's report, presumably regarding the general market conditions and values of tuna fish in Japan, at or about the dates of exportation of the tuna fish involved

herein. This report was not produced and offered in evidence as evidence of a substantial contradictory character to that offered by the appellant herein. Rather than do so, the Government abandoned the collector's appeal. With reference to the inference which must be drawn in a case where a party fails to produce evidence within its knowledge and power, 22 Corpus Juris 111, says:

> The failure of a party to produce evidence which is within his knowledge, which he has power to produce and which he would naturally produce if it were favorable to him, gives rise to an inference that if such evidence were produced it would be unfavorable to him; * * *.

To the same effect is the holding of the Circuit Court of Appeals for the Eighth Circuit, in the case of *Choctaw* v. *Newton*, 140 Fed. 225, as follows:

> Where a party has the means of producing testimony within his knowledge or keeping upon a material question involved in the case, and fails to do so, the presumption arises that the fact is against him. *Gulf, etc. Ry. Co.* v. *Ellis*, 54 Fed. 481, 483, 4 C. C. A. 454; *Clifton* v. *United States*, 4 How. 242, 244, 11 L. Ed. 957; *Graves* v. *United States*, 150 U. S. 120, 14 Sup. Ct. 40, 37 L. Ed. 1021; *Runkle* v. *Burnham*, 153 U. S. 216, 225, 14 Sup. Ct. 837, 38 L. Ed. 694; *Kirby* v. *Talmadge* 160 U. S. 379, 383, 16 Sup. Ct. 349, 40 L. Ed. 463.

The above principals were again pronounced in the case of *Wylde* v. *Cowin*, 250 Fed. 403, wherein the Circuit Court of Appeals, First Circuit, used the following language:

> The failure, unexplained, to produce evidence which is in the possession of a party, raises a presumption that if produced, it would not be favorable to the contention of the party possessing it.

Again in the case of *Atchison, etc. R. Co.* v. *Davis*, 26 Okl. 359, 364, 109 P. 551, the law is stated in the following language:

> When the circumstances in proof on the part of the plaintiff tend to fix a liability on the defendant who has it in his power to offer evidence of all the facts as they existed and rebut the inferences which the circumstances of the facts proved tend to establish, and he fails to offer such proof, the natural conclusion is that such proof, if produced, instead of rebutting, would support the inferences against the defendant, and the jury is justified in acting upon such conclusion.

Applying the law, as above set out, to the facts in this case I feel justified in holding that the failure of the Government to offer the special agent's report in evidence, admittedly in its possession at the time of the trial, raises the natural conclusion that said report, if produced, instead of rebutting, would support the invoice values in this case.

After a careful consideration of the record before me, and following the authorities hereinbefore cited and quoted, I find and hold that the proper dutiable export values of the tuna fish in each of the appeals in this case are the invoiced values, less ocean freight, marine insurance, cartage and lighterage, and consul fee. Judgment will be rendered accordingly.