Porter DEPEW et ux., etc., Plaintiffs,

v.

The HANOVER INSURANCE
COMPANY, Defendant.

Porter DEPEW et ux., etc., Plaintiffs,

v.

INSURANCE COMPANY OF NORTH
AMERICA, Defendant.

Porter DEPEW et ux., etc., Plaintiffs,

v.

The CONTINENTAL INSURANCE
COMPANY, Defendant.

Nos. CIV–2–75–131—CIV–2–75–133.

United States District Court,
E. D. Tennessee,
Northeastern Division.

Dec. 28, 1976.

Howard W. Rhea, Sneedville, Tenn. and
Donald B. Oakley, Morristown, Tenn., for
plaintiffs.

Dennis L. Babb, Knoxville, Tenn. and
David E. Smith, Knoxville, Tenn., for defendants.

## MEMORANDUM OPINION

NEESE, District Judge.

These are civil actions. During the trial, the plaintiff Mr. Porter Depew declined to answer certain questions asked him on cross-examination concerning his federal income tax returns on the ground that his answers might tend to incriminate him in some future criminal prosecution, claiming his privilege against self-incrimination under the Constitution, Fifth Amendment. The Court permitted him to refuse to thus answer under that claim. In instructing the jury, the Court stated *sua sponte, inter alia*:

\* \* \* \* \* \*

Every witness, including a plaintiff in a civil lawsuit, is required to answer all questions put to him, unless the Court rules that he is privileged to refuse to answer on constitutional or other grounds, even if the answers to those questions might have had some bearing on the issues before you.

The Court found that some of the questions put to Mr. Depew by counsel for the defendants might tend to incriminate him in some criminal matter. As to those questions, Mr. Depew was allowed to stand on his right not to incriminate himself under the Constitution, Fifth Amendment, and not answer. As to those ques-

tions, you are not to draw any inference as to what Mr. Depew might have answered had the Court required him to answer; and you are not to consider against Mr. Depew or [his coplaintiff] Mrs. Depew the fact that Mr. Depew claimed his privilege and did not answer those questions.

*       *       *       *       *       *

The defendants Insurance Company of North America and Continental Insurance Company objected to the latter portion of those instructions (relating to inferences), and the defendant The Hanover Insurance Company requested the Court to instruct the jury specially at the conclusion of the main instructions: "I charge you that the plaintiffs [sic: plaintiff's] refusal to testify on cross-examination with respect to his income tax return on grounds it might incriminate him, which is his right under the Constitution, allows you to infer, if you wish, that his answers to those questions would have been damaging and unfavorable to his case [sic: causes of action]. * * * " Cited for this proposition were 29 Am. Jur.(2d) § 188 and *Runkle v. Burnham,* 153 U.S. 216, 14 S.Ct. 837, 38 L.Ed. 694.

It is true that in *Runkle* (in 1894), the late Mr. Justice Harlan I stated, *inter alia:*

* * * That Runkle was the general assignee of Maddison & Co. and considered himself as not only entitled to their rights, but also as the representative of their obligations in connection with the loan and water works contract, results from the terms of a power of attorney, in which he authorizes the agent not only to acquire Maddison & Co's rights, but to stipulate for the discharge of their obligation. In other words, the contract, read in connection with the terms of the power of attorney, leaves no doubt that Runkle was dealing and treating in the capacity of a person who was not only entitled to the rights, but also was subject to the liabilities of all the original parties to the loan and water works contract. This view is strengthened by the fact that, although Runkle testified on the trial, the assignment from Maddison & Co. to him was not offered in evidence, nor even referred to. The failure to produce it, or to testify in reference to it, when its contents were peculiarly within the knowledge of Runkle, justifies the presumption that its provisions would have been unfavorable to Runkle's position. * * *

*Ibid.,* 153 U.S. at 227–228, 14 S.Ct. at 842, 38 L.Ed. at 698 (see headnote 8). It is to be noticed that Runkle had not failed to testify on a claim of his privilege against self-incrimination; so, *Runkle, supra,* is inapposite to our problem.

The decisions are clear that when a witness in a criminal prosecution refuses to answer certain questions directed to him, which may have some bearing on the case, this should not be construed against the criminal defendant in any way, when such witness, by so refusing to answer, merely stands upon his constitutional right not to subject himself by self-incrimination to a possible criminal prosecution. *United States v. Harmon,* C.A. 6th (1964), 339 F.2d 354, 358–359, n. 5, certiorari denied (1965), 380 U.S. 944, 85 S.Ct. 1025, 13 L.Ed.2d 963, rehearing denied (1965), 380 U.S. 989, 85 S.Ct. 1330, 14 L.Ed.2d 282. To allow an adverse inference to be drawn from the exercise of the claim of privilege would be " * * * a penalty imposed by courts for exercising a constitutional privilege. It cuts down on the privilege by making its assertion costly. * * * " *Griffin v. United States* (1965), 380 U.S. 609, 614, 85 S.Ct. 1229, 1232, 14 L.Ed.2d 106, 109–110[3], rehearing denied (1965), 381 U.S. 957, 85 S.Ct. 1497, 14 L.Ed.2d 730.

Where the defendant requested special instructions to the jury to the effect that its members were not to consider in any way or allow his invoking his Fifth Amendment privilege against testifying to play any part in the jury's consideration of his case, and the trial judge denied that request, the defendant's judgment of conviction was reversed on that ground. *Bruno v. United States* (1939), 308 U.S. 287, 292–294, 60 S.Ct. 198, 84 L.Ed. 257, 259–261. So, it is unmistakable that the law precludes the use

of adverse inferences in criminal actions where someone has claimed the privilege against self-incrimination.

 And, the Supreme Court has said that the Fifth Amendment privilege " * * * 'applies alike to civil and criminal proceedings, wherever the answer might tend to subject to criminal responsibility him who gives it.' * * * " *Lefkowitz v. Turley* (1973), 414 U.S. 70, 77, 94 S.Ct. 316, 322, 38 L.Ed.2d 274, 281[4], [5], citing and quoting from *McCarthy v. Arndstein* (1924), 266 U.S. 34, 45 S.Ct. 16, 69 L.Ed. 158. The exercise by any person of his constitutional right under the Fifth Amendment is not to carry with it any sinister meaning. *Slochower v. Board of Ed. of N.Y.* (1956), 350 U.S. 551, 557, 76 S.Ct. 637, 100 L.Ed. 692, 700, rehearing denied (1956), 351 U.S. 944, 76 S.Ct. 843, 100 L.Ed. 1470. He is entitled to " * * * the full enjoyment * * * " of the constitutional privilege against self-incrimination. *Ibid.*, 350 U.S. at 558, 76 S.Ct. at 641, 100 L.Ed. at 700 (headnote 6).

In addition, the Supreme Court adopted a proposed rule of evidence which would have prohibited the drawing of any adverse inference from the assertion of a claim of privilege. Proposed Rule 513(a), Federal Rules of Evidence, see Miscellaneous Proceedings of Supreme Court (1972), 93 S.Ct. 45, 34 L.Ed.2d 37. It adopted also a proposed rule which would have allowed any party against whom an adverse inference from a claim of privilege might have been drawn to obtain, on request, a special instruction to the jury that no inference may be drawn therefrom. Proposed Rule 513(c), *supra.* Although the Congress rewrote the entire section of the evidentiary rules relating to privilege, see Rule 501, Federal Rules of Evidence, the advisory committee notes on Proposed Rule 513(c), *supra,* reflect clearly that a person who claims his privilege against self-incrimination under the federal common-law is entitled to an instruction that such exercise permits no adverse inference, citing *Bruno v. United States, supra.*

Thus, the aforementioned objection to such *sua sponte* instructions was properly overruled, and the special instruction with the same purview requested was properly refused.