**Elouise DICKSON, Plaintiff,**

v.

**SECRETARY OF HEALTH, EDUCATION AND WELFARE, Defendant.**

**Civ. A. Nos. 73–534–C, 76–1245–C.**

United States District Court,
D. Massachusetts.

May 7, 1980.

---

Lois H. Kanter, Boston University Legal Aid Program, Roxbury, Mass., for plaintiff.

Bruce A. Singal, Asst. U. S. Atty., Boston, Mass., for defendant.

## ORDER

CAFFREY, Chief Judge.

In accordance with the memorandum filed this date, it is ORDERED:

The plaintiff's motion for summary judgment is allowed and the defendant's motion for summary judgment is denied.

## MEMORANDUM

This is a civil action brought pursuant to 42 U.S.C. § 405(g) to review a final decision of the Secretary of Health, Education and Welfare which denied plaintiff's application for social security widow's benefits. The matter came before the Court on cross motions for summary judgment which have been argued and briefed. After hearing I rule as follows.

The administrative file, a certified copy of which was appended to defendant's answer, establishes that Samuel Dickson and plaintiff were married in Boston in March of 1941 and that a son, Samuel Dickson, Jr. was born to them in February of 1942. Samuel Dickson deserted plaintiff at about the time of the birth of Samuel Dickson, Jr. On January 14, 1943, plaintiff was admitted to the Boston State Hospital where she resided as an inpatient for several years.

On March 26, 1943, while plaintiff was institutionalized, Samuel Dickson filed a petition for annulment in Suffolk Probate Court. The annulment petition was premised on claims that at the time of the wedding ceremony plaintiff was an insane person incapable of making a contract of marriage and that Samuel Dickson was unaware of that incapacity at the time. The annulment petition was originally returnable April 22, 1943 but the return day was extended until June 10, 1943. A document of the Probate Court states that a copy of the citation issued in connection with the annulment petition was served in hand on plaintiff in May of 1943 and it further recites that the service was witnessed by one, Zalia Kirkpatrick who identified plaintiff to the deputy sheriff who served process. The deputy sheriff did not indicate on his return of service where he allegedly served plaintiff. The witness, Zalia Kirkpatrick later married Samuel Dickson and counsel have informed the Court that she is presently deceased.

The records of the Boston State Hospital for the time in which plaintiff was an inpatient there contain no notation or record of any attempted service of process on her at that institution. She and her sister have testified that she never received any notice of any kind of the annulment proceedings.

The records of the Probate Court indicate that on the last day for filing an appearance in opposition to the allowance of the annulment petition, an appearance purporting to be on behalf of plaintiff was filed by one John S. R. Bourne. Plaintiff and her sister testified that none of them ever met Mr. Bourne and none of them ever was informed that he purported to represent plaintiff in the annulment proceeding at any time. It may be pure coincidence but it should be noted that Attorney Bourne had his law office at 294 Washington Street, Boston, the building in which William Lewis, attorney for Samuel Dickson, also had his office.

An investigator appointed by the Probate Court advised the Court of the existence of Samuel Dickson, Jr. on September 17, 1943

and about 8 months thereafter plaintiff's purported attorney, Mr. Bourne, filed a document also advising the Probate Court of the existence of Samuel Dickson, Jr. In June of 1944, Bourne purporting to act for plaintiff, filed a document in the Probate Court stating in pertinent part: "Contest is ended by agreement with· Attorney Lewis who has asked me to report to the court. Please enter decree." This document purporting to be entered with plaintiff's authority made no provision for the support of plaintiff or the support of Samuel Dickson, Jr. The decree of annulment was entered on June 8, 1944 but three days earlier, on June 5, 1944, Samuel Dickson had married Zalia Kirkpatrick.

Plaintiff was released from the Boston State Hospital on July 8, 1955. Samuel Dickson died on January 25, 1968. Plaintiff applied for social security widow's benefits as Samuel Dickson's widow on February 18, 1970 and her claim was denied by the Secretary on the grounds that her marriage to the wage earner, Samuel Dickson, had been annulled. An administrative hearing was held in July of 1972, after which the Administrative Law Judge rendered an opinion adverse to plaintiff. That decision eventually became the final decision of the Secretary and subject to judicial review. Plaintiff filed her first case under 42 U.S.C. § 405(g) in this Court on February 16, 1973 protesting the hearing examiner's refusing to allow a collateral attack on the Probate Court decree of annulment. This Court entered an order on December 9, 1974 remanding the case to the Secretary with the direction, "to examine state law and determine whether or not a decree of the type involved herein may be set aside." Thereafter a second administrative hearing was held on June 9, 1975. The Administrative Law Judge made Zalia Kirkpatrick a party to the hearing because at that time she was collecting wage earner's benefits *qua* widow of Samuel Dickson. An attorney for Zalia Kirkpatrick appeared at the hearing but Zalia herself did not. The evidence adduced at that later hearing was substantially the same as that described above. The hearing examiner found that no fraud was perpetrated in securing the annulment and his decision negative to plaintiff ultimately became the final decision of the Secretary. The Administrative Law Judge refused to draw an adverse inference from the failure of Zalia Dickson to appear and testify at the June 9, 1975 hearing even though she was the only person alive and available who could have testified from her own personal knowledge as to the alleged service of the annulment citation on plaintiff back in May of 1943.

The matter is presently before this Court for a determination of the validity of the Secretary's two negative and final decisions. Under 42 U.S.C. § 405(g),. the findings by the Secretary as to any facts, if supported by substantial evidence, are to be treated by the reviewing court as conclusive. The Administrative Procedure Act also requires that the reviewing court set aside administrative decisions which are: ". . . (A)rbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . . (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; [or] (D) without observance of procedure required by law . . .. 5 U.S.C. § 706(2). *Ferran v. Fleming*, 293 F.2d 568, 571 (5th Cir. 1961).

I rule that the Administrative Law Judge's refusal to draw a negative inference was an error of law. *See generally Grady v. Collins Transportation Co.*, 341 Mass. 502, 170 N.E.2d 725 (1960); *The Bolton Castle*, 250 F. 403 (C.C.A.Mass.1918). I further rule that even without the drawing of the inference which should have been drawn, the record before the hearing examiner as well as the record before this Court clearly shows that the annulment was obtained by fraud on plaintiff through the unauthorized appearance of an attorney on her behalf who had absolutely no authority to represent her at any time. I rule that the failure of the Administrative Law Judge to so rule is so contrary to established law as to be an arbitrary and capricious ruling within the meaning of 5 U.S.C.

§ 706(2), *see Campbell v. United States*, 365 U.S. 85, 96, 81 S.Ct. 421, 427, 5 L.Ed.2d 428 (1961), and that his contrary ruling is not supported by substantial evidence within the meaning of 42 U.S.C. § 405(g). Accordingly, I rule that plaintiff herein is entitled to have her motion for summary judgment allowed and that defendant's motion for summary judgment is denied.

Order accordingly.